UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, AND ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>-against-<br><br>HEALTH HEAVEN SERVICES INC., DASHA STRONG, JOHN DOES 1 THROUGH 5 AND ABC CORPORATIONS 1 THROUGH 5,<br><br>Defendants. | CIVIL ACTION<br><br>25-CV-3243<br><br>COMPLAINT<br><br>(TRIAL BY JURY DEMANDED) |

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, and Allstate Property and Casualty Insurance Company, ("**Plaintiffs**"), by its attorneys, Manning & Kass, Ellrod, Ramirez, Trester LLP, for their Complaint against Defendants Health Heaven Services Inc. ("**Health Heaven**") Dasha Strong ("**Strong**")(Health Heaven and Strong are collectively referred to as "**Retail Defendants**"), John Does 1 through 5 and ABC Corporations 1 through 5  (collectively referred to herein with the Retail Defendants as "**Defendants**"), allege as follows:

## PRELIMINARY STATEMENT

1.     From at least March 2023 and continuing through the date of the filing of this Complaint, Defendants engaged in a scheme to defraud automobile insurance companies, including Plaintiffs, through New York State's No-fault system.

2.     This action seeks to recover more than $63,000.00 that Defendants stole from Plaintiffs through the submission of thousands of false and/or fraudulent insurance claims for durable medical equipment ("DME") and/or orthotic devices, as well as claims for rental pain management durable medical equipment devices, in particular Therapain pulsed laser ("Therapain Pulsed Laser") devices ("Rental DME").  As used herein, (i) "DME" generally refers to equipment

and/or supplies used for medical purposes by individuals in their homes, including, among other things, cervical pillows, cervical traction units, cold/hot water circulating pumps, EMS/TENS units, hot/cold packs, infrared heat lamps, lumbar cushions, mattresses, sustained acoustic medicine devices, continuous passive motion devices, laser therapy devices and compression devices; and (ii) "orthotic devices" generally refers to items that are used to support a weak or deformed body member or to restrict or eliminate movement for medical purposes. Such items include, but are not limited to, back braces, cervical collars, knee braces, shoulder braces and wrist braces.

3.      At all relevant times mentioned herein, each and every DME and/or orthotic device supplied by Health Heaven was provided pursuant to a predetermined course of treatment, irrespective of medical necessity, based on illicit kickback and/or other financial compensation agreements between and among one or more of the Defendants and the No-fault Clinics, as defined below.

4.      To execute the scheme to defraud alleged herein, Strong, through Health Heaven, entered into arrangements with, *inter alia*, one or more medical clinics operating in the New York metropolitan area, including Kings and Queens counties, among others, that bills No-fault insurers for medical services (hereinafter "No-fault Clinics").

5.      Pursuant to these arrangements and in exchange for kickbacks and/or other financial compensation, the managers, owners and/or controllers of No-fault Clinics, which are not named as defendants in this action, facilitated the scheme in several ways, including but not limited to:

> (i) ensuring that their associated doctors and/or chiropractors (hereinafter "Health Care Practitioners" or "HCPs") prescribed large amounts of virtually identical DME and/or orthotic devices to their patient population,

2

pursuant to a predetermined course of treatment irrespective of medical necessity, with the prescribed items being dictated by Health Heaven;

(ii) ensuring that the prescriptions were sufficiently generic so that the nature, quality, and cost of any DME and/or orthotic device could not be verified based on the description of the prescribed item alone; and/or

(iii) ensuring that the prescriptions were provided directly to Health Heaven to ensure that Health Heaven could bill Plaintiffs to purportedly fill the prescription rather than allow the possibility that the Covered Person may fill the prescription at a DME retailer of their own choosing.

6.      The use of generic template and/or boilerplate language in the fraudulent prescriptions enabled the Retail Defendants to: (i) misrepresent the nature and quality of the DME and/or orthotic devices prescribed to the patient, if any items were legitimately prescribed at all; (ii) misrepresent the nature and quality of the items that were dispensed to the patient, if any items were dispensed at all; and (iii) fraudulently bill for products that would result in the highest forms of reimbursement from insurers, in general, and Plaintiffs, in particular.

7.      Pursuant to the fraudulent prescriptions, Health Heaven routinely provided (or purported to provide) a nearly identical battery of DME and/or orthotic devices to persons injured in automobile accidents insured by Plaintiffs (hereinafter "Covered Persons"), regardless of medical necessity, in order to maximize reimbursement from insurers in general, and Plaintiffs in particular.

8.      On information and belief, the Retail Defendants then paid kickbacks or other forms of compensation to the No-fault Clinics for the fraudulent prescriptions, which were transmitted directly by the Clinics to the Retail Defendants to support their claims for reimbursement.

9.      In many instances, Strong submitted to Plaintiffs, through Health Heaven, prescription forms which they knew to be intentionally generic, in order to misrepresent the number and/or quality of DME and/or orthotic devices actually prescribed by the No-fault Clinics' HCPs, if any were prescribed at all.

10. In furtherance of the scheme to defraud alleged herein, Health Heaven purchased the cheap DME and/or orthotic devices in bulk and routinely misrepresented the nature, quality, and cost of the items in order to fraudulently obtain and maximize its reimbursement far in excess of the amounts it was entitled to receive under the No-fault Law.

11. After obtaining the fraudulent prescriptions from the No-fault Clinics, Strong, through Health Heaven, generated and submitted bills to Plaintiffs, among others, knowingly misrepresenting the actual amounts they paid for the DME and/or orthotic devices, as well as the nature and quality of the items, and the medical necessity of the purportedly prescribed DME and/or orthotics.

12. In order to prevent Plaintiffs from determining the appropriate charges associated with any such DME and/or orthotic device, or whether the specific DME and/or orthotic device billed for was medically necessary, the documents submitted to Plaintiffs by Strong through Health Heaven, in support of their fraudulent claims, deliberately omitted and/or misrepresented basic information about the DME and/or orthotic devices, including, but not limited to, the manufacturer, make, model, size, features and/or functions of the item and/or included information that was meaningless in determining the kind and quality of any specific DME and/or orthotic device.

13. At all relevant times mentioned herein, Strong, through Health Heaven, deliberately omitted any wholesale and/or acquisition invoices from their claim submissions to Plaintiffs in an effort to conceal the actual nature, quality, and purchase price of the items Health Heaven purportedly supplied to Covered Persons.

14. At all relevant times mentioned herein, in support of their claims for reimbursement, and to facilitate the fraud described herein, Strong, through Health Heaven,

4

generated delivery receipts that included a space for the Covered Person's signature to document receipt of each item for which Strong, through Health Heaven, billed Plaintiffs.

15.     On information and belief, often pursuant to the agreements between the Retail Defendants and the No-fault Clinics, Covered Persons were directed to sign these delivery receipts upon presenting to the No-fault Clinics, irrespective of whether any DME and/or orthotic devices were provided to the Covered Person at that time. The Retail Defendants then submitted to Plaintiffs the signed delivery receipts as purported evidence of DME and/or orthotic devices allegedly supplied to a Covered Person, when, in fact, no DME or orthotic device was ever supplied to the Covered Person.

16.     In order to execute the scheme to defraud, at all relevant times mentioned herein, Strong, through Health Heaven, engaged in one or more of the following actions: (i) paying kickbacks or other financial compensation to No-fault Clinics in exchange for fraudulent prescriptions of DME and/or orthotic devices; (ii) obtaining prescriptions that were provided pursuant to a predetermined course of treatment as opposed to medical need; (iii) obtaining and submitting to insurers, in general, and Plaintiffs, in particular, prescriptions which they knew to be fabricated and/or fraudulently altered; (iv) arranging for the No-fault Clinics to have assignments of benefits and acknowledgement of delivery of receipt forms pre-signed by Covered Persons to ensure that they had all of the documents necessary to submit claims to insurers, in general, and Plaintiffs, in particular, and (v) systematically submitting bills to insurers, in general, and Plaintiffs, in particular, for DME and/or orthotic devices that Strong, through Health Heaven, determined should be prescribed by the No-fault Clinics, with virtually every Covered Person receiving substantially similar DME and/or orthotic devices.

17.    At all relevant times mentioned herein, each and every bill and supporting documentation submitted by Health Heaven contained the same or similar false representations of material facts, including, but not limited to one or more of the following: (i) false and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to Covered Persons; (ii) false and misleading statements as to the amounts Health Heaven was entitled to be reimbursed under the No-fault Law; (iii) false and misleading statements that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the Covered Persons; (iv) false and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to Covered Persons, which generically described the item(s) in order to conceal the nature, type, and quality of item(s) being prescribed and/or provided; and (v) false and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices either were not prescribed as alleged, or were prescribed and supplied pursuant to a pre-determined, fraudulent protocol, whereby Health Heaven paid kickbacks to No-fault Clinics to induce the No-fault Clinics to provide fraudulent prescriptions for large amounts of substantially similar, medically unnecessary DME and/or orthotic devices.  All of foregoing was intended to manipulate the payment formulas under the No-fault Law in order to maximize the charges that Health Heaven could submit to Plaintiffs and other insurers under the No-fault Law.

18.    In carrying out the scheme to defraud, Defendants stole in excess of $63,000.00 from Plaintiffs by submitting, causing to be submitted or facilitating the submission of fraudulent claims for persons who allegedly sustained injuries covered by the New York State Comprehensive Motor Vehicle Insurance Reparations Act, Ins. Law §§ 5101, *et seq*. (popularly known as the "No-fault Law").

## STATUTORY/REGULATORY SCHEME

19.     Pursuant to the No-fault Law, Plaintiffs are required to pay, *inter alia*, for health service expenses that are reasonably incurred as a result of injuries suffered by occupants of their insured motor vehicles or pedestrians, which arise from the use or operation of such motor vehicles in the State of New York.  Covered Persons can also assign these benefits to doctors and other properly licensed healthcare providers, including DME retailers, enabling them to bill insurance companies directly for their services.

20.     As alleged herein, Defendants exploited and continue to exploit this system by obtaining such assignments and billing Plaintiffs for DME and/or orthotic devices that were never provided, not provided as billed or, if provided, were of inferior quality relative to what was represented to have been provided in the bills submitted to Plaintiffs, and/or were otherwise medically unnecessary and provided pursuant to fraudulent prescriptions in conformity with a predetermined course of treatment in which virtually all Covered Persons received substantially similar DME and/or orthotic devices.  Exhibit "1" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs to Health Heaven for medical equipment and/or other services provided pursuant to fraudulent prescriptions based upon a predetermined course of treatment, irrespective of medical necessity.

21.     Health Heaven is ostensibly a DME supply company that bills for medical supplies provided to, among others, individuals covered under the No-fault Law.  In exchange for its services, Health Heaven accepted assignments of benefits from Covered Persons and submitted claims for payment to No-fault insurance carriers, in general, and to Plaintiffs, in particular.

22.     In accordance with the No-fault Law and 11 N.Y.C.R.R. §§ 65 *et seq*., Health Heaven submitted its claims to Plaintiffs using the claim forms prescribed by the New York State

7

Department of Financial Services ("DFS," f/k/a the Department of Insurance), including the "No-Fault Assignment of Benefits Form" or form "NF-AOB" and a bill in the form of the "Verification of Treatment by Attending Physician or Other Provider of Health Service" or "NYS form NF-3" (hereinafter "NF-3"), or a substantially similar form (such as the "Health Insurance Claim Form" or "CMS Form 1500").

23.     At all relevant times mentioned herein, pursuant to Section 403 of the New York State Insurance Law, the claim forms submitted to Plaintiffs by Health Heaven contained the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for commercial insurance or statement of claim for any commercial or personal insurance benefits containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto…commits a fraudulent insurance act, which is a crime….

24.     At all relevant times mentioned herein, Health Heaven identified the DME and/or orthotic devices it purported provided to Covered Persons on the claim forms using Healthcare Common Procedure Coding System (HCPCS) Level II Codes, a standardized coding system maintained by the Centers for Medicare & Medicaid Services (CMS) used to identify services not identified in the American Medical Association's Current Procedural Terminology (CPT) code set, including, *inter alia*, durable medical equipment and orthotic devices.

25.     At all relevant times mentioned herein, pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, Plaintiffs was (and is) required to promptly process claims within 30 days of receipt of proof of claim.

26.     At all relevant times mentioned herein, Section 5108 of the No-fault Law circumscribes the amount that a licensed healthcare provider or other authorized person, such as a DME provider, may recover for health service-related expenses. Under this section, such persons

are only entitled to reimbursement of necessary medically related expenses in accordance with the applicable fee schedules established by the Chairman of the Workers' Compensation Board and adopted by the Superintendent of the DFS.

27.    By Opinion Letter dated June 16, 2004, entitled "No-Fault Fees for Durable Medical Equipment," the New York State Insurance Department recognized the harm inflicted on insureds by inflated DME charges:

> [A]n injured person, with a finite amount of No-Fault benefits available, having assigned his rights to a provider in good faith, would have DME items of inflated fees constituting a disproportionate share of benefits, be deducted from the amount of the person's No-Fault benefits, resulting in less benefits available for other necessary health related services that are based upon reasonable fees.

28.    At all relevant times mentioned herein, pursuant to Ins. Law § 5108, the Superintendent of the DFS adopted, by promulgation of Regulation 83, the Workers' Compensation Board ("WCB") Fee Schedules for determining the maximum permissible reimbursement amounts for which health care providers may charge for services provided to Covered Persons under the No-fault Law. 11 N.Y.C.R.R. § 68.1.

29.    At all relevant times mentioned herein, Regulation 83 did not adopt the Workers' Compensation Fee Schedules with respect to "workers' compensation claim forms, pre-authorization approval, time limitations within which health services must be performed, enhanced reimbursement for providers of certain designated services..."

30.    Effective October 6, 2004, the Department of Financial Services, through the Superintendent's promulgation of the 28th Amendment to Regulation 83 (11 N.Y.C.R.R. § 68 *et. seq.*), established a fee schedule for the reimbursement of durable medical equipment and medical supplies by adopting the New York State Medicaid fee schedules for durable medical equipment, medical/surgical supplies, orthopedic footwear, and orthotic and prosthetic appliances.

31.     The 28th Amendment to Regulation 83 provided:

> [The] maximum permissible charge for the purchase of durable medical equipment, medical/surgical supplies, orthopedic footwear and orthotic and prosthetic appliances is the fee payable for such equipment and supplies under the New York State Medicaid program at the time such equipment and supplies are provided. If the New York State Medicaid program has not established a fee payable for the specific item, then the fee payable, shall be the lesser of: (1) the acquisition cost (i.e. the line item cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50%; or (2) the usual and customary price charged to the general public.

11 N.Y.C.R.R. § 68 (Appendix 17-C, Part F) (effective through July 10, 2007).

32.     Effective July 11, 2007, for DME and/or orthotic devices provided up to and including April 3, 2022, the WCB established a fee schedule for DME and orthotic devices by also adopting the New York State Medicaid fee schedule for durable medical equipment, medical/surgical supplies, orthopedic footwear, and orthotic and prosthetic appliances (hereinafter the "Medicaid DME Fee Schedule"). 12 N.Y.C.R.R. § 442.2(a) (effective through June 7, 2021), which lists such devices by corresponding HCPCS Level II code.

33.     In view of the adoption by the WCB of the Medicaid DME Fee Schedule, on or about April 16, 2008, the DFS promulgated the 30th Amendment to Regulation 83, which repealed Part F of Appendix 17-C, since it was no longer needed due to the DFS' prior adoption of the WCB's fee schedule, which then included the Medicaid DME Fee Schedule that was, and is, in effect at all relevant times mentioned herein prior to April 4, 2022.

34.     Accordingly, at all relevant times mentioned herein for DME and/or orthotic devices provided prior to April 4, 2022, providers of DME are entitled to reimbursement in the amounts set forth in the Medicaid DME Fee Schedule. At all relevant times mentioned herein, with respect to items not listed on the Medicaid DME Fee Schedule provided prior to April 4, 2022 (hereinafter "Non-Medicaid DME Fee Schedule" items), the provider is only entitled to

reimbursement in an amount equal to the *lesser* of either: (i) the net acquisition cost of the medical equipment to the provider, plus 50%, or (ii) the usual and customary price charged to the public. 11 N.Y.C.R.R. § 68.1; 12 N.Y.C.R.R. § 442.2(a) (effective through June 7, 2021) (sometimes referred to herein as the "Lesser of Standard").

35.    At all relevant times mentioned herein, prior to April 4, 2022, under the Medicaid DME Fee Schedule, providers of rental DME were limited to a maximum permissible monthly rental charge as follows: "equipment, supplies and services provided on a rental basis shall not exceed the lower of the monthly rental charge to the general public or the price determined by the New York State Department of Health area office. The total accumulated monthly rental charges shall not exceed the fee amount allowed under the Medicaid fee schedule." 12 N.Y.C.R.R. § 442.2(b) (effective through June 7, 2021).

36.    Furthermore, at all relevant times mentioned herein, prior to April 4, 2022, "[t]he maximum permissible charge for the purchase of durable medical equipment, medical/surgical supplies, and orthotic and prosthetic appliances and the maximum permissible monthly rental charge for such equipment, supplies, and services provided on a rental basis as set forth in subdivisions (a) and (b) of this section are payment in full and there are no separate and/or additional payments for shipping, handling, and delivery." 12 N.Y.C.R.R. § 442.2(c) (effective through June 7, 2021).

37.    At all relevant times mentioned herein, prior to April 4, 2022, the total monthly rental charge for equipment, supplies and services billed under codes listed in the Medicaid DME Fee Schedule is ten percent (10%) of the listed maximum reimbursement amount.

38.    At all relevant times mentioned herein, prior to April 4, 2022, for DME billed under HCPCS codes that are recognized under the Fee Schedule, but do not contain a maximum

reimbursement amount, the maximum charge for a monthly rental is ten percent (10%) of the acquisition cost for the DME, which includes all supplies that are provided with the DME rental. *See Government Emp. Ins. Co. v. MiiSupply LLC,* Index No. 616953/18, Docket No.: 43 (N.Y. Sup. Ct. Nassau Cty., December 4, 2019).

39.     By Board Bulletin Numbers 046-1408, dated May 24, 2021, and 046-1496, dated February 3, 2022, the Chair of the WCB delayed the implementation of amendments to 12 N.Y.C.R.R. §§ 442.2, 442.4 and 442.5, which was to become effective June 7, 2021, with the result that the Medicaid DME Fee Schedule and the Lesser of Standard remained effective for Workers' Compensation and No-fault claims until the completion of Phase 2 of the WCB's implementation of its new electronic claims management system, OnBoard on April 4, 2022. New York Workers' Compensation Board Bulletin Nos. 046-1408 (May 24, 2021) (http://www.wcb.ny.gov/content/main/SubjectNos/sn046_1408.jsp), 046-1496 (Feb. 3, 2022) (http://www.wcb.ny.gov/content/main/SubjectNos/sn046_1496.jsp).

40.     In relevant part, for DME and/or orthotic devices provided on or after April 4, 2022, the WCB established its own fee schedule for DME and orthotic devices to replace its prior adoption of the Medicaid DME Fee Schedule for durable medical equipment, medical/surgical supplies, orthopedic footwear, and orthotic and prosthetic appliances. (hereinafter "WCB DME Fee Schedule") *See* 12 N.Y.C.R.R. § 442.2(a) (WCB DME Fee Schedule and Medicaid DME Fee Schedule are collectively referred to as the "Fee Schedule").

41.     Like the Medicaid DME Fee Schedule, the WCB DME Fee Schedule lists DME and orthotic devices by their corresponding HCPCS Level II Codes.

42.     As part of the WCB amendment of 12 N.Y.C.R.R. § 442.2 and adoption of the WCB DME Fee Schedule, the available DME on the applicable Fee Schedule was updated, the

reimbursement rates were increased, and a prior authorization process was established for certain DME in the WCB DME Fee Schedule for which no reimbursement rate is listed and/or for DME not listed in the WCB DME Fee Schedule. As a result of these amendments, the WCB eliminated the prior Lesser of Standard that had existed for Non-WCB DME Fee Schedule items.

43.     With respect to rental DME, at all relevant times mentioned herein on or after April 4, 2022, under the WCB DME Fee Schedule, providers of rental DME are limited to:

> The maximum permissible monthly charge for the rental of durable medical equipment shall be the rental price listed in the Official New York Workers' Compensation Durable Medical Equipment Fee Schedule multiplied by the total number of months or weeks respectively for which the durable medical equipment is needed. In the event the total rental charge exceeds the purchase price, the maximum permissible charge for the durable medical equipment shall be the purchase price listed in the Official New York Workers' Compensation Durable Medical Equipment Fee Schedule, whether or not the claimant keeps the durable medical equipment or returns it when no longer needed.

12 N.Y.C.R.R. § 442.2(a)(2).

44.     With the exception of, among other things, the prior authorization requirement for DME either not listed on the WCB Fee Schedule or listed without a maximum reimbursement amount, the WCB DME Fee Schedule applies to the reimbursement under the No-fault Law of items listed in the WCB DME Fee Schedule provided on or after April 4, 2022.

45.     To address the potential for fraud and abuse, the elimination of a cost-containment system, and the possibility for nefarious DME providers to bill for DME at exorbitant, unchecked rates in the No-fault context by the WCB's elimination of the Lesser of Standard for reimbursement of items not listed on the WCB DME Fee Schedule, by emergency adoption of the 36th Amendment to Regulation 83 dated April 4, 2022, the DFS reinstated the Lesser of Standard for reimbursement of DME under the No-fault law.

46.    By Emergency Adoptions dated June 30, 2022, September 27, 2022, and December 28, 2022, DFS extended its reinstatement of the Lesser of Standard for reimbursement of DME under the No-fault law, in each instance, for an additional 90 days.

47.    DFS promulgated its final Adoption of the 36th Amendment to Regulation 83, including its reinstatement of the Lesser of Standard, effective February 15, 2023, which states in relevant part as follows:

**Part E. Durable medical equipment fee schedule**.

(a) This Part shall apply to durable medical equipment not listed in the Official New York Workers' Compensation Durable Medical Equipment Fee Schedule and to durable medical equipment listed in the Official New York Workers' Compensation Durable Medical Equipment Fee Schedule for which no fee for purchase, rental, or both has been assigned.

(b) As used in this Part, acquisition cost means the line-item cost to the provider from a manufacturer or wholesaler net of any rebates, discounts or valuable consideration, mailing, shipping, handling, insurance costs or sales tax.

(c) The maximum permissible purchase charge for such durable medical equipment shall be the lesser of the:

(1) acquisition cost plus 50%; or

(2) usual and customary price charged by durable medical equipment providers to the general public.

(d) (1) On and after June 1, 2023, the maximum permissible monthly rental charge for such durable medical equipment shall be one-tenth of the acquisition cost to the provider. Rental charges for less than one month shall be calculated on a pro-rata basis using a 30-day month.

(2)    The total accumulated rental charge for such durable medical equipment shall be the least of the:

(i)    acquisition cost plus 50%;

(ii)    usual and customary price charged by durable medical equipment providers to the general public; or

(iii)    purchase fee for such durable medical equipment established in the Official New York Workers' Compensation Durable Medical Equipment Fee Schedule.

https://www.dfs.ny.gov/system/files/documents/2023/02/ rf_ins_83_amend36_text.pdf.

48.     At all times relevant times mentioned herein from April 4, 2022 through the present, with respect to DME items that are not listed on the WCB DME Fee Schedule and/or listed on the WCB DME Fee Schedule but for which no fee has been assigned (hereinafter "Non-WCB DME Fee Schedule" items) (Non-WCB DME Fee Schedule items and Non-Medicaid DME Fee Schedule items are collectively referred to as "Non-Fee Schedule" items), the maximum permissible reimbursement shall be determined by application of the Lesser of Standard as reflected in the Emergency Adoption of the 36th Amendment to Regulation 83 dated April 4, 2022, extended by Emergency Adoptions dated June 30, 2022, September 27, 2022, and December 28, 2022, and thereafter in the Final Adoption of the 36th Amendment to Regulation 83, effective February 15, 2023. 11 N.Y.C.R.R, § App.17-C Part E.

49.      At all relevant times mentioned herein from April 4, 2022 through the present, a provider's acquisition cost is "the line-item cost to the provider from a manufacturer or wholesaler net of any rebates, discounts or valuable consideration, mailing, shipping, handling, insurance costs or sales tax." 11 N.Y.C.R.R. § App.17-C Part E(b).

50.     At all relevant times mentioned herein, pursuant to Section 5108(c) of the No-fault Law, "no provider of health services . . . may demand or request any payment in addition to the charges authorized pursuant to this section."

51.     Moreover, to be eligible for reimbursement under the No-fault Law during all relevant times mentioned herein, all claims for reimbursement must include a description of the "full particulars of the nature and extent of the . . . treatment received," including DME. *See* 11 N.Y.C.R.R. § 65-1.1.

52.     At all relevant times mentioned herein, nearly each and every bill mailed to Plaintiffs by Strong, through Health Heaven, sought reimbursement in excess of the amounts

authorized by the No-fault Law, by materially misrepresenting the DME and/or orthotic devices provided, if provided at all, as well as the cost, quality, and medical necessity of the billed-for DME and/or orthotic devices.  To the extent the DME and/or orthotic devices were provided at all, each item was a basic, low-quality piece of medical equipment for which the proper reimbursement amount, if reimbursable at all, was a mere fraction of the amount they charged Plaintiffs, and/or was medically unnecessary because it was provided pursuant to a predetermined course of treatment, irrespective of medical need, and was billed in an amount far in excess of what the Retail Defendants were entitled to be reimbursed.

53.    At all times relevant herein, the Defendants exploited the No-fault Law through the utilization of various deceptive and identical billing tactics engineered to maximize the amount of reimbursement from insurers, in general, and Plaintiffs, in particular, through the submission of fraudulent billing documents that misrepresented the nature, quality and cost of items that both are and are not listed on the relevant fee schedule ("Fee Schedule items" and "Non-Fee Schedule items," respectively) purportedly provided to Covered Persons.

54.    As set forth in the "Non-Fee Schedule Scheme to Defraud" below, Strong, through Health Heaven, routinely submitted bills to Plaintiffs for Non-Fee Schedule items wherein Health Heaven misrepresented that (i) the DME and/or orthotic devices purportedly provided were reimbursable under the relevant Fee Schedule in existence at the time, when, in fact, Health Heaven was utilizing codes that were not recognized by, or otherwise listed in, the relevant Fee Schedule ("phantom codes"); (ii) the charges reflected on Health Heaven's bills were in accordance with 12 N.Y.C.R.R. § 442.2 and/or 11 N.Y.C.R.R. § App.17-C Part E, when, in fact, the charges were grossly inflated; and/or (iii) the DME and/or orthotic devices purportedly provided were reimbursable pursuant to the Fee Schedule, when they were not.  In doing so, Strong, as described

in the "Non-Fee Schedule Scheme to Defraud" section below, through Health Heaven, deliberately misrepresented the amounts that they were entitled to receive under the No-fault Law.

55.     In addition, as set forth in the "Fee Schedule Scheme to Defraud" section below, Strong, through Health Heaven, also routinely submitted fraudulent bills to Plaintiffs for (i) expensive custom-fabricated DME and/or orthotic devices, such as shoulder braces that were never provided; (ii) expensive DME and/or orthotic devices that required a customized fitting that they never performed; and/or (iii) reimbursement under expensive fee schedule codes for DME and/or orthotic devices that Health Heaven never actually provided.

56.     On information and belief, every aspect of Defendants' fraudulent scheme was motivated by money, without regard to the grave harm inflicted on the public at large by the Defendants, who, to the extent that they provided any DME and/or orthotic devices at all, provided Covered Persons with inferior, low-quality items, or items that directly contravened the treatment plan indicated by the treating physicians, potentially compromising Covered Persons' health.

57.     The duration, scope and nature of the Defendants' illegal conduct bring this case well within the realm of criminal conduct to which the Racketeer Influenced and Corrupt Organizations Act ("RICO") applies. Defendants did not engage in sporadic acts of fraud – although that would be troubling enough – rather, they adopted a business plan and used it to participate in systematic patterns of racketeering activity. Every facet of Defendants' operations, from securing fraudulent prescriptions for DME and/or orthotic devices pursuant to a predetermined course of treatment, to obtaining inexpensive, low quality items, to generating bills that contained codes not recognized under the Fee Schedule in existence at the time, or that misrepresented the nature, quality, and cost of DME and/or orthotic devices purportedly provided, was carried out for the purpose of committing fraud.

58.     This lawsuit seeks to, among other things, enforce the plain language of the No-fault Law and implementing regulations, as well as its underlying public policy, which limits reimbursement of No-fault benefits to legitimate insurance claims for DME and/or orthotic devices.  In doing so, Plaintiffs seek compensatory damages and declaratory relief that Plaintiffs are not required to pay any of the Retail Defendants' No-fault claims because Strong, through Health Heaven, submitted (1) false and fraudulent insurance claims to Plaintiffs deliberately misrepresenting the amounts they were entitled to be reimbursed; (2) false and fraudulent insurance claims to Plaintiffs for DME and/or orthotic devices the Retail Defendants never actually supplied to Covered Persons; and/or (3) false and fraudulent insurance claims to Plaintiffs for DME that, to the extent anything was provided at all, was provided pursuant to a predetermined protocol of treatment without regard to medical necessity.  Such claims continue to be submitted by and/or in the name of Health Heaven and are, or can be, the subject of No-fault collection actions and/or arbitrations to recover benefits, and thus, constitute a continuing harm to Plaintiffs.

59.     By way of example and not limitation, Exhibit "2" in the accompanying Compendium of Exhibits is a spreadsheet listing in excess of $206,000.00 in unpaid No-fault claims that form the basis of Plaintiffs' request for declaratory relief.  Said spreadsheet is grouped by claim number, date of service and the amount billed.

## NATURE OF THE ACTION

60.     This action is brought pursuant to:

i)      The United States Racketeer Influenced and Corrupt Organizations Act ("RICO"); 18 U.S.C. §§ 1961, 1962(c) and 1964(c);

ii)     New York State common law; and

iii)    the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

## **NATURE OF RELIEF SOUGHT**

61.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs seek treble damages, which they sustained as a result of the Defendants' schemes to defraud and acts of mail fraud in connection with their use of the facilities of the No-fault system to fraudulently obtain payments from Plaintiffs for DME and/or orthotic devices they allegedly provided to individuals covered by Plaintiffs under New York State's No-fault Law.

62.     Plaintiffs further seek a judgment declaring that they are under no obligation to pay any of Health Heaven's unpaid No-fault claims because:

i)     The Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs to obtain reimbursement far in excess of the maximum permissible amount they could submit to Plaintiffs;

ii)     The Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs seeking reimbursement for DME and/or orthotic devices that they never supplied to Covered Persons; and

iii)     The Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs seeking reimbursement for DME that, to the extent anything was provided at all, was provided pursuant to a predetermined protocol of treatment without regard to medical necessity.

63.     As a result of Defendants' actions alleged herein, Plaintiffs were defrauded of an amount in excess of $63,000.00 the exact amount to be determined at trial, in payments which Defendants received for fraudulently billing Plaintiffs for DME and/or orthotic devices that were never provided or, if provided, not provided as billed and/or provided pursuant to fraudulent prescriptions in accordance with a predetermined course of treatment, irrespective of medical need.

## THE PARTIES

### A.    Plaintiffs

64.    Plaintiff Allstate Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

65.    Plaintiff Allstate Fire and Casualty Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

66.    Plaintiff Allstate Indemnity Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

67.    Plaintiff Allstate Property and Casualty Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

68.    Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company are collectively referred to herein as "Plaintiffs."

69.    Plaintiffs are duly organized and licensed to engage in the writing of automobile insurance policies in the State of New York and provide automobile insurance coverage to their policyholders under and in accordance with New York State law.

### B.    Retail Defendants

70.    Dasha Strong ("Strong") is a natural person residing in the State of New York, is the principal, officer, and/or director of Health Heaven and, at all times relevant herein, operated, managed, and/or controlled its activities.

71.     Health Heaven Supplies Inc. ("Health Heaven") was incorporated on March 29, 2023, and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 1519 Decatur Street Suite 108F, Ridgewood, NY 11385.  Health Heaven is operated, managed, and/or controlled by Defendant Strong and submitted fraudulent claims to Plaintiffs seeking reimbursement for DME and/or orthotic devices under the No-fault Law.

**C.     The John Doe Defendants**

72.     On information and belief, John Does 1 through 5 are individuals that are unknown to Plaintiffs, who conspired, participated, conducted, and assisted in the fraudulent and unlawful conduct alleged herein. These individuals will be added as defendants when their names and the extent of their participation become known through discovery.

**D.     The ABC Corporations**

73.     On information and belief, the ABC Corporations 1 through 5 are additional companies that are unknown to Plaintiffs that are owned, controlled, and operated by one or more of the John Doe Defendants, which were used in connection with the kickback scheme with the Defendants alleged herein to obtain referrals, prescriptions and/or patients in furtherance of the scheme.  These ABC Corporations 1 through 5 will be added as defendants when their names and the full extent of their participation become known through discovery.

<b><u>JURISDICTION AND VENUE</u></b>

74.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*. because they arise under the laws of the United States.

75.      This Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § l332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

76.      This Court also has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a).

77.      Pursuant to 18 U.S.C. § 1965, 28 U.S.C. § 1367 and New York C.P.L.R. § 302(a), this Court has personal jurisdiction over any non-domiciliary defendant.

78.      Venue lies in this District Court under the provisions of 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) as the Eastern District of New York is the district where a substantial amount of the activities forming the basis of the Complaint occurred.

## FACTUAL BACKGROUND AND ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

79.      Plaintiffs underwrite automobile insurance in New York State and participate as insurers in New York State's No-fault program.

80.      As set forth in the Statutory/Regulatory Scheme section above, pursuant to the No-fault Law, Plaintiffs are required to pay for, *inter alia*, health service expenses that are reasonably incurred as a result of injuries suffered by occupants of their insured motor vehicles and pedestrians that arise from the use or operation of such motor vehicles in the State of New York.

81.      Health Heaven is ostensibly a DME supply company that bills for medical supplies provided to, among others, individuals covered under the No-fault Law.  In exchange for its services, Health Heaven accepts assignments of benefits from Covered Persons covered under the No-Fault Law and submits claims for payment to No-fault insurance carriers, in general, and to Plaintiffs, in particular.

82.     To process and verify the claims submitted by Health Heaven, Plaintiffs required, and Health Heaven submitted, prescriptions and other documents relating to the DME and/or orthotic devices allegedly supplied to Covered Persons for which Health Heaven was seeking reimbursement from Plaintiffs.

83.     In nearly all instances, the prescriptions submitted in support of Health Heaven's claims for reimbursement were fraudulent, fabricated, and/or issued pursuant to a pre-determined treatment protocol, regardless of medical necessity.

84.     At all relevant times mentioned herein, in each bill submission to No-fault insurers in general, and Plaintiffs in particular, Health Heaven made the following representations to each recipient:

- The bill for DME and/or orthotic devices was based on a valid prescription by a healthcare practitioner licensed to issue such prescriptions;

- The prescription for DME and/or orthotic device(s) was not issued pursuant to any unlawful financial arrangements;

- The DME and/or orthotic device(s) identified on the bill was actually provided to the Covered person based on a valid prescription identifying medically necessary items;

- The billing code used on the bill actually represents the DME and/or orthotic device(s) and all included services that was provided to the Covered Person; and

- The fee sought for the billed for DME and/or orthotic device(s) did not exceed that permissible under the No-fault law and regulations.

85.     Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, Plaintiffs are required to promptly process Health Heaven's claims within 30 days of receipt of proof of claim.

86.     To fulfill its obligation to promptly process claims, Plaintiffs justifiably relied upon the bills and documentation submitted by Health Heaven in support of its claims, and paid Health

Heaven based on the representations and information contained in the bills and documentation that Defendants mailed to Plaintiffs.

87.     At all relevant times mentioned herein, the No-fault Law provides that the maximum permissible charge for the purchase of durable medical equipment, medical/surgical supplies and orthotic and prosthetic appliances is the fee payable for such equipment and supplies under the relevant fee schedule established by the Worker's Compensation Board, as adopted by the Superintendent of the DFS. N.Y. Ins. Law § 5108; 11 N.Y.C.R.R. 68.1(a).

88.     At all relevant times mentioned herein, for DME and orthotic devices provided to Covered Persons prior to April 4, 2022, the Worker's Compensation Board has adopted the fee schedule set by the New York State Medicaid program at the time such equipment and supplies are provided. 12 N.Y.C.R.R. § 442.2 (effective through June 7, 2021).

89.     At all relevant times mentioned herein prior to April 4, 2022, with respect to DME and/or medical supplies for which the New York State Medicaid program had not established a fee ("Non-Medicaid DME Fee Schedule Items"), the regulation provides that the fee payable shall be the lesser of:

    (1)   the acquisition cost (*i.e.*, the line item cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50 percent; or

    (2)   the usual and customary price charged to the general public.

12 N.Y.C.R.R § 442.2 (effective through June 7, 2021).

90.     At all relevant times mentioned herein prior to April 4, 2022, the regulation provides that suppliers of rental DME were limited to a maximum permissible monthly rental charge as follows: "equipment, supplies and services provided on a rental basis shall not exceed the lower of the monthly rental charge to the general public or the price determined by the New York

State Department of Health area office. The total accumulated monthly rental charges shall not exceed the fee amount allowed under the Medicaid fee schedule." 12 N.Y.C.R.R. § 442.2(b) (effective through June 7, 2021).

91.     Furthermore, at all relevant times mentioned herein prior to April 4, 2022, "[t]he maximum permissible charge for the purchase of durable medical equipment, medical/surgical supplies, and orthotic and prosthetic appliances and the maximum permissible monthly rental charge for such equipment, supplies, and services provided on a rental basis as set forth in subdivisions (a) and (b) of this section are payment in full and there are no separate and/or additional payments for shipping, handling, and delivery." 12 N.Y.C.R.R. § 442.2(c) (effective through June 7, 2021).

92.     At all relevant times mentioned herein prior to April 4, 2022, the total monthly rental charge for equipment, supplies and services billed under codes listed in the Fee Schedule is ten percent (10%) of the listed maximum reimbursement amount.

93.     At all relevant times mentioned herein prior to April 4, 2022, for DME billed under HCPCS codes that are recognized under the Fee Schedule, but do not contain a maximum reimbursement amount, the maximum charge for a monthly rental is ten percent (10%) of the acquisition cost for the DME, which includes all supplies that are provided with the DME rental. *See Government Emp. Ins. Co. v. MiiSupply LLC,* Index No. 616953/18, Docket No. 43 (N.Y. Sup. Ct. Nassau Cty., December 4, 2019).

94.     As a result of the WCB's delay of implementation of amendments to 12 N.Y.C.R.R. § 442.2, intended to become effective June 7, 2021, the fee schedule set by the New York State Medicaid Program and adopted by the WCB, and the Lesser of Standard continued to set the maximum permissible charge for DME and/or orthotic devices dispensed through April 3, 2022.

New York Workers' Compensation Board Bulletin Nos. 046-1408 (May 24, 2021), 046-1496 (Feb. 3, 2022).

95.     On April 4, 2022, the WCB's amendments to 12 N.Y.C.R.R. § 442.2 took effect, including the establishment of the WCB DME Fee Schedule to replace the WCB's adoption of the Medicaid DME Fee Schedule.  As part of the WCB's establishment of the WCB DME Fee Schedule, the available DME on the Fee Schedule was updated, some reimbursement rates were increased, and a prior authorization process was established for certain DME in the WCB DME Fee Schedule for which no reimbursement rate is listed and/or for DME not listed in the WCB DME Fee Schedule.  As a result of these amendments, the WCB eliminated the prior Lesser of Standard that had existed for Non-Fee Schedule items.

96.     Accordingly, at all relevant times mentioned herein on or after April 4, 2022, under the No-fault Law, providers of DME are entitled to reimbursement in the amounts set forth in the WCB DME Fee Schedule.

97.     In view of the WCB's elimination of the Lesser of Standard, resulting in the absence of a cost control measure for Non-WCB DME Fee Schedule items, the DFS Superintendent deemed it necessary to adopt an emergency amendment to 11 N.Y.C.R.R. § 68 (Regulation 83) to cap the purchase prices for Non-WCB Fee Schedule items.

98.     Accordingly, at all relevant times mentioned herein on or after April 4, 2022, for Non-WCB Fee Schedule DME, the fee payable shall be: [t]he maximum permissible purchase charge or the total accumulated rental charge for such durable medical equipment shall be the lesser of the: (1) acquisition cost plus 50%; or (2) usual and customary price charged by durable medical equipment providers to the general public. 11 N.Y.C.R.R. § App.17-C Part E(c) (promulgated by April 4, 2022, June 30, 2022, September 27, 2022, and December 28, 2022

Notices of Emergency Adoption); *accord* 11 N.Y.C.R.R. § App.17-C Part E(c),(d)(2).  (Final Adoption effective February 15, 2023).  Moreover, at all relevant times mentioned herein on or after June 1, 2023, for the rental of DME either not listed on the WCB Fee Schedule, or listed without a maximum permissible rental charge, the "maximum permissible monthly rental charge for such durable medical equipment shall be one-tenth of the acquisition cost to the provider. Rental Charges for less than one month shall be calculated on a pro-rata basis using a 30-day month." 11 N.Y.C.R.R. § App.17-C Part E(d)(1) (Final Adoption effective February 15, 2023). As used in the regulation, "*acquisition cost* means the line-item cost to the provider from a manufacturer or wholesaler net of any rebates, discounts or valuable consideration, mailing, shipping, handling, insurance costs or sales tax." 11 N.Y.C.R.R. § App.17-C Part E (b) (promulgated by Notices of Emergency Adoption issued April 4, 2022, June 30, 2022, September 27, 2022, and December 28, 2022, and Final Adoption effective February 15, 2023).

99.    Health Heaven was created as the centerpiece of an elaborate scheme to fraudulently bill No-fault insurance carriers for DME and/or orthotic devices that were never provided, were not provided as billed or, if provided, were either of inferior quality relative to what was included in the bills submitted to Plaintiffs, and/or were otherwise medically unnecessary and provided pursuant to a predetermined course of treatment in which virtually all Covered Persons received the same or similar battery of DME and/or orthotic devices.

100.    The DME and/or orthotic devices that Health Heaven purported to provide, and for which they billed Plaintiffs, seldom varied from patient-to-patient over a given period of time and also did not change based on any differences in the Covered Persons' condition, age, complaints, type of accident, or nature of alleged injury.  Instead, Strong, through Health Heaven, created a billing apparatus implementing a pre-determined treatment protocol that was designed to drain the

maximum amount of dollars from insurance companies for each and every Covered Person, including those who required little or no DME at all.

101.    Strong created and controlled Health Heaven as part of a well-organized illegal enterprise that engaged in systematic and pervasive fraudulent practices that distinguished it from legitimate providers of DME and/or orthotic devices.  The components of this enterprise followed practices that were part of a racketeering scheme dictated by Strong, including, but not limited to, the one of more of the following practices:

- Unlike legitimate retail DME companies, Strong, through Health Heaven, misrepresented the nature, quality, and cost of DME and/or orthotic devices purportedly provided to Covered Persons;

- Unlike legitimate retail DME companies, Strong, through Health Heaven, submitted bills to Plaintiffs misrepresenting the amounts they were entitled to be reimbursed under the No-fault Law;

- Unlike legitimate retail DME companies, Strong, through Health Heaven, submitted bills to Plaintiffs for DME and/or orthotic devices that were never provided to Covered Persons;

- Unlike legitimate retail DME companies, Strong, through Health Heaven, misrepresented the acquisition costs and/or usual and customary price of the Non-fee Schedule items purportedly supplied to Covered Persons;

- Unlike legitimate retail DME companies, Strong, through Health Heaven, submitted bills to Plaintiffs reflecting prices far in excess of those actually paid, concealing that the items actually supplied were far less expensive than the amounts indicated in the bills for any particular item;

- Unlike legitimate retail DME companies, Strong, through Health Heaven, submitted prescriptions, bills, and delivery receipts to Plaintiffs for DME and/or orthotic devices that generically described the item(s) so as to conceal the type of item(s) being prescribed and/or provided;

- Unlike legitimate retail DME companies, Strong, through Health Heaven, concealed the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol pursuant to a kickback or other financial arrangement with No-fault Clinics;

- Unlike legitimate retail DME companies, Strong, through Health Heaven and/or those acting under their direction and control, had agreements and/or understandings as to what generic DME and/or orthotic devices would be prescribed by the No-fault Clinics;

- Unlike legitimate retail DME companies, Strong, through Health Heaven, arranged for the generic language on the prescription forms in order to unilaterally determine the DME and/or orthotic devices to be provided to Covered Persons and billed to insurers, in general, and Plaintiffs in particular;

- Unlike legitimate retail DME companies, Strong, through Health Heaven, arranged to have prescriptions for DME and/or orthotic devices delivered to them directly by the No-fault Clinics, rather than allowing the Covered Persons to select their own DME supply company; and/or

- Unlike legitimate retail DME companies, Health Heaven claimed to conduct their daily operations from locations that in some cases had no signage, were shuttered, and/or presented no indication that any business was conducted at that location.

102.    In these and numerous other ways, Defendants sought to deceive Plaintiffs into paying fraudulent claims that typically exceeded thousands of dollars per Covered Person.

103.    The members of the Health Heaven enterprise alleged herein played well-defined and essential roles in the Defendants' scheme to defraud and in directing the affairs of the enterprises.  By way of example and not limitation, in furtherance of their scheme to defraud, Health Heaven engaged in one or more the following:

- Entered into kickback or other financial arrangements with No-fault Clinics, not named as defendants in this action, to ensure that their HCPs prescribed large amounts of virtually identical DME and/or orthotic devices to their patient population;

- Entered into kickback or other financial arrangements with No-fault Clinics to ensure that the prescriptions provided were sufficiently generic so that the nature, quality, and cost of any DME and/or orthotic device could not be verified based on the description of the prescribed item alone;

- Entered into kickback or other financial arrangements with No-fault Clinics to ensure that the prescriptions provided were sufficiently generic so that Health Heaven could unilaterally determine the DME and/or orthotic devices to be provided to Covered Persons and billed to insurers, in general, and Plaintiffs in particular;

- Submitted or caused to be submitted, on behalf of Health Heaven, numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to many Covered Persons;

- Prepared or caused to be prepared fraudulent bills to be mailed to Plaintiffs; and/or

- Mailed or caused those acting under their direction to mail bogus claims to Plaintiffs, knowing that they contained materially false and misleading information.

104.    At all relevant times mentioned herein, Strong knew that the prescriptions provided by the No-fault Clinics were fraudulent in that they were issued pursuant to a fraudulent treatment protocol at the No-fault Clinic in connection with an unlawful referral and/or kickback scheme for medically unnecessary DME.

105.    At all relevant times mentioned herein, Strong, through Health Heaven, directly or through others acting under and pursuant to their direction, instruction, and control, submitted or caused to be submitted the fraudulent prescription and claim forms in furtherance of the scheme to defraud alleged herein, to obtain payment in connection with fraudulent claims.

106.    At all relevant times mentioned herein, Strong and the No-fault Clinics, acting in concert with each other, participated in, conducted, controlled, conspired together, aided and abetted and furthered the fraudulent schemes through a common course of conduct and purpose, which was to defraud insurers, in general, and Plaintiffs, in particular, of money.

## THE MECHANICS OF THE SCHEME TO DEFRAUD

107.    Beginning in March 2023 and continuing until the present day, Defendants and others not named in the Complaint have engaged in systematic fraudulent billing schemes based upon the alleged provision of DME and/or orthotic devices to Covered Persons.

108.    Strong incorporated, owned and/or controlled Health Heaven for the purpose of defrauding insurers, in general, and Plaintiffs, in particular.

109.    Strong, through Health Heaven, engaged in a scheme to defraud, wherein Strong: (i) paid kickbacks to the No-fault Clinics in exchange for prescriptions of DME and/or orthotic devices; (ii) obtained prescriptions that were provided pursuant to a predetermined course of treatment, without regard to medical necessity; (iii) obtained and submitted to insurers, in general,

and Plaintiffs, in particular, prescriptions which they knew to be intentionally generic in order to misrepresent the number and/or quality of DME and/or orthotic devices actually prescribed; (iv) arranged for the No-fault Clinics to have assignments of benefits and acknowledgement of delivery receipt forms signed by Covered Persons on their behalf to ensure that they had all of the documents necessary to submit claims to insurers, in general, and Plaintiffs, in particular; and (v) systematically submitted bills to insurers, in general, and Plaintiffs, in particular, for DME and/or orthotic devices that were purportedly provided to Covered Persons based on medical necessity when, in fact, Strong, through Health Heaven, determined the DME that would be prescribed by the No-fault Clinics, with virtually every Covered Person receiving a substantially similar battery of DME and/or orthotic devices.

110.    With Health Heaven in place, Defendants carried out their scheme to fraudulently bill insurers, in general, and Plaintiffs, in particular, for expensive DME and/or orthotic devices that were never provided, or if provided, were provided pursuant to fraudulent prescriptions based upon a pre-determined treatment protocol, irrespective of medical necessity, and further, were inexpensive items of inferior quality that cost a fraction of the amounts that Defendants materially misrepresented in their fraudulent bill submissions to Plaintiffs.

111.    Regardless of whether a Covered Person was seen by a doctor on the date of the initial office visit at any of the unnamed No-fault Clinics operating in the New York metropolitan area, a Covered Person's initial office consultation would automatically trigger a series of internal practices and procedures in which the No-fault Clinics, in exchange for kickbacks and/or other financial compensation agreements with Health Heaven, would issue a prescription for a standard battery of DME and/or orthotic devices, pursuant to a standard protocol or predetermined course of treatment and regardless of whether such items were medically necessary.

112.    Such prescriptions are issued for virtually every Covered Person, regardless of factors such as their age, height, weight, prior medical history, position in the vehicle and/or purported involvement in an accident.

113.    As part of the scheme to defraud described herein, pursuant to kickbacks or other financial compensation agreements with Health Heaven, the No-fault Clinics arranged for the fraudulent prescriptions to be issued to Health Heaven by: (i) causing their Health Care Practitioners ("HCPs") to write DME prescriptions in accordance with a pre-determined protocol; (ii) ensuring that the prescriptions were sufficiently generic so that the nature, quality and cost of any DME and/or orthotic device could not be verified based on the description of the prescribed item alone; and/or (iii) ensuring that the prescriptions were provided directly to Health Heaven to ensure that Health Heaven could bill Plaintiffs to purportedly fill the prescription rather than allow the possibility that the Covered Person may fill the prescription at a DME retailer of their own choosing.

114.    In numerous instances, not only did Covered Persons receive the same or similar battery of DME and/or orthotic devices, but oftentimes two or more Covered Persons that were purportedly injured in the same accident would receive identical or virtually identical prescriptions for DME and/or orthotic devices despite being different ages, in different physical condition, differently positioned in the same motor vehicle accident, and possessing differing medical needs.

115.    On information and belief, it is improbable that two or more Covered Persons in the same motor vehicle accident would suffer substantially similar injuries, be in similar physical health and/or have similar symptoms that would require identical or virtually identical DME and/or orthotic devices, let alone multiple Covered Persons.

116.    In furtherance of the scheme to defraud alleged herein, pursuant to the fraudulent protocol of treatment, the HCPs at the No-fault Clinics routinely prescribed identical DME and/or orthotic devices to two or more Covered Persons who were involved in the same accident.  By way of example and not limitation:

- On May 15, 2023, Covered Persons N.S., claim no. 0715772919-01 and R.S., claim no. 0715772919-02 were involved in the same automobile accident, but were in different physical health and experienced the impact from different locations in the vehicle, yet purportedly received the same DME and/or orthotic devices from Defendant Heaven Health despite their injuries being almost certainly different pursuant to prescriptions issued by Joseph Martone, P.A. (not named as a Defendant in the Complaint) of Atlantic Medical & Diagnostic, PC (not named as a Defendant in the Complaint), a No-fault Clinic located at 8925 130th Street, Richmond Hill, New York 11418:

| Covered Person | Date of Service | DME Billed For | Billing Code | Amount Billed |
|---|---|---|---|---|
| N.S. | 5/25/2023 | 1. Hot/Cold Pack | A9273 | $5.40 |
| | | 2. Dry Pressure Mattress | E0184 | $153.13 |
| | | 3. Positioning Cushion | E0190 | $22.04 |
| | | 4. Bed Board | E0199 | $19.48 |
| | | 5. Massager | E1399 | $164.00 |
| | | 6. Cervical Collar | L0172 | $75.00 |
| | | 7. Lumbar Orthosis | L0627 | $322.98 |
| R.S. | 5/24/2023 | 1. Hot/Cold Pack | A9273 | $5.40 |
| | | 2. Dry Pressure Mattress | E0184 | $153.13 |
| | | 3. Positioning Cushion | E0190 | $22.04 |
| | | 4. Bed Board | E0199 | $19.48 |
| | | 5. Massager | E1399 | $164.00 |
| | | 6. Cervical Collar | L0172 | $75.00 |
| | | 7. Lumbar Orthosis | L0627 | $322.98 |

- On August 28, 2023, Covered Persons A.K., claim no. 0726933799-01and J.K., claim no. 0726933799-01 were involved in the same automobile accident, but were in different physical health and experienced the impact from different locations in the vehicle, yet purportedly received virtually the same DME and/or orthotic devices from Defendant Heaven Health despite their injuries being almost certainly different pursuant to prescriptions issued by Gamil Kostandy, MD (not named as a Defendant in the Complaint) of New Era Medical, P.C. (not named as a Defendant in the Complaint), a No-fault Clinic located at 1839 Pitkin Avenue, Brooklyn, New York 11212:

| Covered Person | Date of Service | DME Billed For | Billing Code | Amount Billed |
|---|---|---|---|---|
| A.K. | 9/9/2023 | 1. Dry Pressure Mattress | E0184 | $153.13 |
| | | 2. Bed Board | E0199 | $19.48 |
| | | 3. Ankle/Foot Orthosis | L1930 | $194.00 |
| | | 4. Cervical Collar | L0180 | $233.00 |
| | | 5. Lumbar Orthosis | L0627 | $322.98 |
| | | 6. Knee Orthosis | L1831 | $208.13 |
| J.K. | 9/11/2023 | 1. Dry Pressure Mattress | E0184 | $153.13 |
| | | 2. Bed Board | E0199 | $19.48 |
| | | 3. Ankle/Foot Orthosis | E1930 | $194.00 |
| | | 4.Cervical Collar | L0180 | $233.00 |
| | | 5. Lumbar Orthosis | L0627 | $322.98 |
| | | 6. Knee Orthosis | L1831 | $208.13 |

- On or around August 9, 2023, Covered Persons I.A., claim no. 0724844949-01 and E.S., claim no. 0724844949-02, were involved in the same automobile accident, but were in different physical health and experienced the impact from different locations in the vehicle, yet purportedly received virtually the same DME and/or orthotic devices from Defendant Heaven Health despite their injuries being almost certainly different pursuant to prescriptions issued by Gaeten Jean Marie, NP (not named as a Defendant in the Complaint) of Gaeten Jean Marie Family Health NP, PLLC (not named as a Defendant in the Complaint), a No-fault Clinic located at 100 Duffy Street, Hicksville, New York 11801:

| Covered Person | Date of Service | DME Billed For | Billing Code | Amount Billed |
|---|---|---|---|---|
| I.A. | 8/28/2023 | 1. Dry Pressure Mattress | E0184 | $153.13 |
| | | 2. Positioning Cushion | E0190 | $22.04 |
| | | 3. Bed Board | E0199 | $19.48 |
| | | 4. Electric Heat Pad | E0215 | $20.93 |
| | | 5. Massager | E1399 | $164.00 |
| | | 6. Wheelchair Cushion | E2611 | $282.40 |
| | | 7. Cervical Collar | L0172 | $75.00 |
| | | 8. Lumbar Orthosis | L0627 | $322.98 |
| | 10/7/2023 | 9. Infrared Lamp | E0205 | $210.00 |
| | | 10. TENS Unit | E0730 | $76.25 |
| | | 11. TENS Belt | E0731 | $71.05 |
| | | 12. Whirlpool | E1300 | $473.00 |
| | | 13. Knee Orthosis | L1844 | $1,107.70 |
| | 10/25/2023 | 14. Cervical Traction Equipment | E0855 | $502.63 |
| | | 15. Lumbar Orthosis | L0637 | $844.13 |
| E.S. | 9/8/2023 | 1. Dry Pressure Mattress | E0184 | $153.13 |
| | | 2. Positioning Cushion | E0190 | $22.04 |
| | | 3. Bed Board | E0199 | $19.48 |
| | | 4. Electric Heat Pad | E0215 | $20.93 |
| | | 5. Massager | E1399 | $164.00 |

| Covered Person | Date of Service | DME Billed For | Billing Code | Amount Billed |
|---|---|---|---|---|
| | | 6. Wheelchair Cushion | E2611 | $282.40 |
| | | 7. Cervical Collar | L0172 | $75.00 |
| | | 8. Lumbar Orthosis | L0627 | $322.98 |
| | 10/27/2023 | 9. Infrared Lamp | E0205 | $210.00 |
| | | 10. TENS Unit | E0730 | $76.25 |
| | | 11. TENS Belt | E0731 | $71.05 |
| | | 12. Whirlpool | E1300 | $473.00 |

- On April 26, 2023, Covered Persons A.H., claim no. 0714793726-05, C.M., claim no. 0714793726-04, and M.V., claim no. 0714793726-01, were involved in the same automobile accident, but were in different physical health and experienced the impact from different locations in the vehicle, yet purportedly received the same DME and/or orthotic devices from Defendant Heaven Health despite their injuries being almost certainly different pursuant to prescriptions issued by Edwin Emerson, D.C. (not named as a Defendant in the Complaint) of Align Chiropractic, P.C. (not named as a Defendant in the Complaint), a No-fault Clinic located at 7420 Avenue N, Brooklyn, New York 11234:

| Covered Person | Date of Service | DME Billed For | Billing Code | Amount Billed |
|---|---|---|---|---|
| A.H. | 7/7/2023 | 1. Cervical Traction Equipment | E0855 | $502.63 |
| | | 2. Lumbar Orthosis | L0637 | $844.13 |
| C.M. | 6/15/2023 | 1. Cervical Traction Equipment | E0855 | $502.63 |
| | | 2. Lumbar Orthosis | L0637 | $844.13 |
| M.V. | 6/8/2023 | 1. Cervical Traction Equipment | E0855 | $502.63 |
| | | 2. Lumber Orthosis | L0637 | $844.13 |

117. The foregoing are only representative examples of the claims mailed to Plaintiffs. In many of the mailings identified in the Appendix to the Complaint and claims identified in Exhibits "1" and "2," Heaven Health billed for DME and/or orthotic devices purportedly supplied to Covered Persons in which the HCPs at the No-fault Clinics routinely prescribed identical DME and/or orthotic devices to two or more Covered Persons who were involved in the same accident.

118. In furtherance of the scheme to defraud alleged herein, and to obtain access to Covered Persons for which Heaven Health submitted fraudulent claims for DME and/or orthotic devices to Plaintiffs and insurers in general, the Retail Defendants entered into collusive arrangements with the prescribing No-fault Clinics and the John Doe and ABC Corporation

Defendants in order to obtain prescriptions for the Rental DME and/or orthotic devices purportedly supplied by Heaven Health.

119.    The Retail Defendants engaged in these unlawful financial arrangements with the John Doe and/or ABC Corporation Defendants, including paying kickbacks in exchange for obtaining prescriptions for the DME and/or orthotic devices provided by Heaven Health, among other durable medical equipment suppliers that billed on the claims.  The unlawful financial arrangements allowed the Retailer Defendants to submit hundreds of charges for the DME and/or orthotic devices that were billed in accordance with a predetermined course of treatment, irrespective of medical need, established at the No-fault Clinics, which almost exclusively treat No-fault Covered Persons, in amounts that far exceeded what the Retail Defendants were entitled to be reimbursed.

120.    The No-fault Clinics that supplied Health Heaven with nearly identical, boilerplate prescriptions for DME came from clinic locations with a "revolving door" of medical providers, including, but not limited to the following clinic locations:  (i) 81-06 Baxter Ave, Elmhurst, NY 11373; (ii) 1839 Pitkin Ave, NY, NY 11208; (iii) 4720 Avenue N, Brooklyn, NY 11234; and (iv) 8925 130th Street, Richmond Hill, NY 11418.

121.    Though ostensibly organized to provide a range of healthcare services to Insureds at a single location, the No-Fault Clinics from where the Retail Defendants obtained the prescription and referrals for the DME, in actuality, were organized to supply "one-stop" shops for No-Fault insurance fraud.

122.    On information and belief, unlicensed laypersons, rather than the healthcare professionals working in the No-fault Clinics, created and controlled the purported patient base at the Clinics, and directed fraudulent protocols used to maximize profits without regard to actual

patient care by exploiting the No-fault Law and applicable Fee Schedule through the utilization of various deceptive billing tactics engineered to maximize the amount of reimbursement from insurers, in general, and Plaintiffs, in particular.

123.    In furtherance of the scheme to defraud, numerous prescriptions for DME and/or orthotics, resulting in claims submitted by Strong, through Health Heaven, to Plaintiffs, were also issued by medical providers that purportedly provided medical services through Atlantic Medical & Diagnostic PC, a professional corporation in which Jonathan Landow ("Landow") is listed as the record owner and which operates out of several locations throughout the New York metropolitan area.  Landow and several professional corporations in which he is listed as the record owner, including Atlantic Medical & Diagnostic, P.C. were sued by multiple No-fault insurance carriers for allegedly engaging in a multimillion-dollar fraud scheme involving, among other things, rendering healthcare services pursuant to fraudulent billing and treatment protocols and engaging in illegal kickback and referral arrangements, in actions that remain pending or that ultimately settled. *See Allstate Ins. Co., et al, v. Landow, M.D., et al.*, 24-cv-02010 (E.D.N.Y.); *Government Emp. Ins. Co., et al. v. Landow, M.D., et al.*, 21-cv-01440 (E.D.N.Y.); *Government Emp. Ins. Co., et al. v. Urban Medical, P.C., M.D., et al.*, 18-cv-02956 (E.D.N.Y.); *Travelers Pers. Ins. Co., et al. v. Landow, M.D., et al.*, Index No. 656567/2021 (N.Y. Sup. Ct., N.Y. Cty.).

124.    By way of further example but not limitation, numerous prescriptions resulting in claims submitted by Strong, through Health Heaven, to Plaintiffs, were issued in the name of Gaetan Jean Marie, N.P. (not named a defendant in the Complaint), from No-fault Clinics located at 87-10 Northern Boulevard, Queens, New York, 82-17 Woodhaven Boulevard, Ridgewood, New York, and 243-51 Merrick Boulevard, Ridgewood, NY 11385, including the following practices - - Gaetan Jean Marie Family Health NP, PLLC, South Shore Family Health NP, P.C., New Arena

P.T., P.C., and/or Future Rehab Physical Therapy PC. Gaetan Jean Marie Family Health NP, PLLC and South Shore Family Health NP, P.C., purportedly owned by Marie as well as other practices New Arena P.T., P.C. and Future Rehab Physical Therapy PC., all of which who have been sued for being fraudulently incorporated by unlicensed lay persons, and fraudulently billing No-fault insurance carriers for services pursuant to fraudulent pre-determined billing and treatment protocols in exchange for illegal kickbacks. *See Liberty Mutual Insurance Company et al. v. New Arena PT, P.C., et al*. 24-cv-1646 (DG)(JRC).

125.    By way of further example but not limitation, a number of the fraudulent prescriptions for DME and/or orthotics, resulting in claims submitted by Strong, through Health Heaven, to Plaintiffs, were also issued by medical providers that purportedly provided medical services through Metropolitan Medical & Surgical P.C., a professional corporation in which Mark Gladstein ("Gladstein") is listed as the record owner.  Gladstein, and several professional corporations in which he is listed as the record owner, including Metropolitan Medical & Surgical P.C. have been sued by multiple No-fault insurance carriers for allegedly engaging in various multimillion-dollar fraud schemes involving, among other things, rendering healthcare services pursuant to fraudulent billing and treatment protocols and engaging in illegal kickback and referral arrangements in actions that remain pending or that ultimately settled. *See, e.g., Liberty Mutual Mid. Atlantic Ins. Co. et al. v. Advanced Comprehensive Laboratory, LLC, et al,* 22-cv-3541 (AMD)(JRC) (E.D.N.Y. 2022); *State Farm Mut. Auto. Ins. Co., et al. v. Metro Pain Specialists, P.C.,* 21-cv-5523 (MKB)(PK) (E.D.N.Y. 2021); *Government Employees Ins. Co. et al. v. Advanced Comprehensive Laboratory, LLC, et al*., 20-cv-2391 (KAM)(VMS) (E.D.N.Y. 2020).

126.    On information and belief, in connection with the unlawful financial arrangements with No-fault Clinics, the Retail Defendants would pay kickbacks to individuals associated with

the No-fault Clinics in order to obtain referrals for the fraudulent DME and/or orthotic devices be provided to Covered Persons who treated at the Clinics.

127.    On information and belief, in keeping with the fact that the prescriptions for DME and/or orthotic devices were the result of unlawful kickbacks and/or referral relationships between the rental Defendant and the Clinics, Strong never met most of the HCPs who issued the prescriptions that were provided to the DME Defendants.  Moreover, a number of the prescriptions submitted by Strong, through Health Heaven, to Plaintiffs were fabricated and/or fraudulently altered and/or duplicated in order to misrepresent that CPM devices were medically necessary, when in fact, the DME and/or orthotic devices were provided, if at all, to financially enrich Strong through a fraudulent protocol of treatment.

128.    Further, the prescriptions from the Clinics were sent to and obtained by Heaven Health directly from the Clinics without any communication or involvement by the Covered Persons.  In further keeping with the fact that the prescriptions for the DME and/or orthotic devices were the result of unlawful financial arrangements between the Retail Defendants and the No-fault Clinics, the Covered Persons were never given access to the prescriptions or given the option to use any other DME retailer for the DME and/or orthotic devices other than Heaven Health.

129.    At all relevant times mentioned herein, each and every piece of DME and/or orthotic device supplied by Heaven Health was provided pursuant to a predetermined course of treatment, irrespective of medical necessity, based on illicit kickback and/or other financial compensation agreements between and among one or more of the Defendants and the No-fault Clinics, who provided the prescriptions to Heaven Health to be used in support of the fraudulent DME claims that exploited and manipulated the payment formulas under the applicable Fee Schedule in order to maximize the charges that they could submit to Plaintiffs and other insurers.

130.    As a result of the unlawful kickback and/or other financial compensation agreements, the Retail Defendants obtained large numbers of prescriptions and access to Covered Persons' identifying information that enabled them to bill hundreds of thousands of dollars to Plaintiffs, for just a few exorbitantly priced DME and/or orthotic devices.

131.    But for the payment of kickbacks from the Retail Defendants, the No-fault Clinics, in conjunction with the HCPs, would not have had any reason to: (i) direct a substantial number of medically unnecessary prescriptions to Heaven Health; (ii) make the Covered Persons' information available to Heaven Health; and/or (iii) provide Heaven Health with the fraudulent prescriptions.

132.    Upon information and belief, the payment of kickbacks and/or other financial compensation by the Retail Defendants was made at or near the time the prescriptions were issued, but the Retail Defendants and the No-fault Clinics affirmatively concealed the particular amounts paid since the payment of kickbacks in exchange for patient referrals violates New York law.

133.    As a result of the unlawful financial arrangements, the Retail Defendants billed hundreds of thousands of dollars to Plaintiffs, and likely millions of dollars to other New York automobile insurers, for the DME and/or orthotic devices.

134.    In furtherance of the fraudulent protocol of treatment, the specific DME and/or orthotic devices prescribed often contradicted the purported treatment plan of the HCPs.

135.    By way of example and not limitation, several Covered Persons were prescribed DME and/or orthotic devices that were designed to decrease and/or restrict the Covered Persons' mobility such as custom fitted LSO.  At the same time, the HCPs, were also prescribed physical therapy treatments designed to increase the Covered Persons' mobility. Representative claims where Covered Persons were provided with DME and/or orthotic device prescription designed to

decrease mobility, while at the same time were actively receiving physical therapy treatments designed to promote mobility include: P.F. 0725405369-02; A.K. 0726933799-01; L.O. 0712533520-02; and R.S. 0715772919-02.

136.    On information and belief, the DME and/or orthotic devices restricting the Covered Persons movement completely contravenes the physical therapy treatments that the Covered Persons were also prescribed.

137.    In addition to arranging for fraudulent prescriptions, in exchange for kickbacks and/or other financial compensation agreements with Health Heaven, one or more No-fault Clinics operating in the New York metropolitan area often directed their HCPs to prescribe DME and/or orthotic devices that are not included in the Fee Schedule, such as bed boards, cushions, infrared heat lamps, massagers, whirlpools; and ensured that the prescriptions issued were generic and non-descript, omitting any detailed description of the items to be supplied to the Covered Persons.

138.    Similarly, as part of the kickback and/or other financial compensation agreements with the No-fault Clinics, the No-fault Clinics routinely provided Health Heaven with generic, non-descript prescriptions for certain Fee Schedule Items, such as back braces, knee braces, shoulder braces, ankle braces, cervical traction units, cervical collars, and lumbar cushions, which Health Heaven then used to unilaterally determine the DME provided to Covered Persons in purported fulfillment of the generic prescriptions, in order to bill for the most expensive type of DME and/or orthotic device and maximize reimbursement from insurers, in general, and Plaintiffs, in particular.

139.    By submitting a generic, non-descript prescription, devoid of any detail, in support of their claims for reimbursement, Health Heaven was provided the means through which they

misrepresented the nature, quality and cost of the DME and/or orthotic devices allegedly prescribed and provided to Covered Persons.

140.    Furthermore, as part of the kickback or other financial compensation agreements with the No-fault Clinics and in furtherance of the scheme to defraud, on their first or second visit to the No-fault Clinic(s), the Covered Persons would be given a number of documents to complete and sign, including, but not limited to, assignment of benefit forms and one or more delivery receipts.

141.    In nearly every instance, in furtherance of the scheme to defraud alleged herein, the delivery receipts describe the DME and/or orthotic devices in the same generic, non-descript manner as the prescriptions, and claim forms submitted by Health Heaven in support of its claims for reimbursement.

142.    In furtherance of the scheme to defraud alleged herein, the delivery receipts submitted by Health Heaven to Plaintiffs routinely misrepresented the DME and/or orthotic devices provided.

143.    In furtherance of the scheme to defraud alleged herein, Strong, through Health Heaven, purchased inexpensive DME and/or orthotic devices from wholesalers not named as defendants herein that were counterfeit or knockoffs of trademarked items made by other manufacturers. At all relevant times mentioned herein, Health Heaven knew that they could purchase the counterfeit items at a fraction of the cost of the actual, trademarked items.

144.    In furtherance of the scheme to defraud alleged herein, Health Heaven purchased the cheap DME and/or orthotic devices in bulk and routinely misrepresented the nature, quality, and cost of the items in order to fraudulently obtain and maximize their reimbursement far in excess of the amounts they were entitled to receive under the No-fault Law.

145.    In furtherance of the scheme to defraud alleged herein, Health Heaven routinely submitted fraudulent documents, including, but not limited to, claim forms, prescriptions, and delivery receipts, that materially misrepresented the nature, quality, and cost of the DME and/or orthotic devices purportedly provided to Covered Persons.

146.    In furtherance of the scheme to defraud alleged herein, Health Heaven routinely submitted fraudulent bills seeking the maximum possible amount of reimbursement under the No-fault Law for expensive DME and/or orthotic devices that were never actually provided or not provided as billed and/or, if provided, provided pursuant to a predetermined course of treatment, without regard to medical necessity.

147.    In many cases, Health Heaven never actually provided the DME for which it billed Plaintiffs.

148.    In furtherance of the scheme to defraud alleged herein, Health Heaven's bills intentionally omitted the make, model, and manufacturer of the DME and/or orthotic devices purportedly provided to Covered Persons in order to conceal the fact that the DME and/or orthotic devices purportedly provided were inexpensive and of poor quality, to the extent they were provided at all.

149.    By way of example and not limitation, and as set forth in the "Non-Fee Schedule Scheme to Defraud" section below, Strong, through Health Heaven, routinely submitted bills to Plaintiffs for Non-Fee Schedule items wherein Health Heaven misrepresented that: (i) the charges reflected on Health Heaven's bills for Non-Fee Schedule items were the lesser of their acquisition costs or the usual and customary prices charged to the general public; and/or (ii) the Fee Schedule codes and descriptions contained in Health Heaven's bills corresponded with the equipment purportedly provided.

150.    In addition, as set forth in the "Fee Schedule Scheme to Defraud" section below, Strong, through Health Heaven, routinely submitted fraudulent bills to Plaintiffs (i) in support of expensive custom-fabricated DME and/or orthotic devices, such as shoulder braces that were never provided; (ii) in support of expensive DME and/or orthotic devices that required a customized fitting that they never performed; and/or (iii) which sought reimbursement rates under expensive fee schedule codes for DME and/or orthotic devices that Health Heaven never actually provided.

151.    In furtherance of the scheme to defraud and to maximize reimbursement from Plaintiffs, virtually every bill submitted by Health Heaven deliberately obscured all identifying information relating to the billed-for DME and/or orthotic devices so as to prevent Plaintiffs from determining the appropriate charges associated with any such DME and/or orthotic device or whether the specific DME and/or orthotic device was medically necessary.

152.    In furtherance of the scheme to defraud alleged herein, Strong, through Health Heaven, routinely submitted fraudulent bills in support of expensive custom fabricated DME and/or orthotic devices, such as shoulder braces that were never provided.  In other instances, Strong, through Health Heaven, routinely submitted fraudulent bills in support of expensive DME and/or orthotic devices that required a custom fitting and/or adjustment which they never performed.  By way of example and not limitation, Exhibit "3" in the accompanying Compendium of Exhibits is a spreadsheet containing a representative sample of claims in which Strong, through Health Heaven, billed for expensive custom fabricated DME and/or orthotic devices that were never provided.  In addition, Exhibit "4" in the accompanying Compendium of Exhibits is a representative sample of claims in which Strong, through Health Heaven, billed for expensive supports and/or braces that required fittings and adjustments which they never performed.

153.    Defendants' activity promoted and facilitated other acts that imposed costs onto Plaintiffs well beyond the insurance proceeds that Defendants collected, including, but not limited to, Plaintiffs' expenditures for verifying each fraudulent claim through examinations under oath, associated attorneys' and court reporting fees, independent medical examinations ("IMEs"), and peer reviews.

## FEE SCHEDULE SCHEME TO DEFRAUD

### 1.    Fraudulent Billing for Custom Fabricated or Custom Fit DME and/or Orthotic Devices.

154.    The term "custom-made" and/or "custom-fabricated" as used in the New York State Medicaid Fee Schedule refers to any DME, orthopedic footwear, orthotics or prosthetics fabricated solely for a particular person from mainly raw materials that cannot be readily changed to conform to another person's needs. *See, e.g.*, Durable Medical Equipment, Orthotics, Prosthetics and Supplies Policy Guidelines, New York State Department of Health (March 1, 2019), at 4.

155.    The term "custom fitted" or "custom fit" as used in the HCPCS Level II code set, created by Centers for Medicare and Medicaid Services ("CMS") and the source of all codes used to bill for DME contained in the Fee Schedule, refers to expensive pre-fabricated DME and/or orthotic devices that requires more than minimal self-adjustment at the time of delivery in order to provide an individualized fit, i.e. the item must be trimmed, bent, molded (with or without heat), or otherwise modified resulting in alterations beyond minimal self-adjustment, and the fitting does require expertise of a certified orthotist or an individual who has specialized training in the provision of orthosis to fit the item to the individual beneficiary. "Definitions Used for Off-the-Shelf versus Custom Fitted Prefabricated Orthotics (Braces)—Correct Coding—Revised," Palmetto GBA (CMS's Pricing, Data Analysis and Coding Contractor) (March 12, 2021),

https://www.dmepdac.com/palmetto/PDACv2.nsf/DIDC/3HJFX8TFDH~Articles%20and%20Pu
blications~Advisory%20Articles.

156.    Health Heaven routinely submitted fraudulent bills in support of expensive pre-
fabricated DME and/or orthotic devices that required a fitting and adjustment in which the device
has been trimmed, bent, molded, assembled, adjusted, modified, or otherwise customized to fit a
specific Covered Person by an individual with expertise, which they never provided.

157.    By way of example and not limitation, under the relevant Fee Schedule in existence
at the time, the permissible charges for lumbosacral orthoses ("LSOs") range from $43.27, under
code L0625 for basic, prefabricated LSOs dispensed off-the-shelf, to $1,150.00 under code L0632
for more complex LSOs that are custom fabricated.

158.    In furtherance of the scheme to defraud, and to ensure they received the maximum
reimbursement permitted under the relevant Fee Schedule in existence at the time for LSOs,
Strong, through Health Heaven, routinely submitted bills for LSOs using codes L0627 and/or
L0637, which are reserved for prefabricated DME and/or orthotic devices that require a
customized fitting, notwithstanding that a customized fitting was never performed.  Exhibit "5" in
the accompanying Compendium of Exhibits is a representative sample of claims where Health
Heaven submitted fraudulent bills for LSOs using codes L0627 and/or L0637.  Furthermore, by
way of example and not limitation, the Appendix to the Complaint, identifies a representative
sample of predicate acts, including claim nos. 0728948134-01, 0728344847-02, 0727589236-02,
0728546896-02,    0726572308-02,    0725405369-02,    0722691318-03,    0721774289-02,
0723983854-03,    0719792839-02,    0718100720-01,    0717651277-02,    0715890927-03,
0715772919-02,    0712801091-01,    0712497188-06,    0711452185-02,    0711491241-02,
0708588330-01, 0708588330-02, and 0707409982-01 in which Health Heaven mailed fraudulent

claims for LSOs, billed under codes L0627 and/or L0637, that were supplied pursuant to the fraudulent protocol of treatment described herein, in exchange for kickbacks and/or other financial compensation agreements, for medically unnecessary items in order to exploit and manipulate the payment formulas under the applicable Fee Schedule to maximize the charges that they could submit to Plaintiffs.

159.    By billing LSOs under codes L0627 and L0637, Strong, through Health Heaven, falsely represented that they measured and/or customized the DME and/or orthotic device for the Covered Person, when they did not, and/or that they fabricated the DME and/or orthotic device solely for a particular Covered Person from mainly raw materials based on the Covered Persons' measurements, tracings, and patterns, which they did not.

160.    To the extent any DME and/or orthotic devices were provided, Strong, through Health Heaven, provided cheap, prefabricated one-size-fits-all back braces, which were not custom made to the Covered Person's measurements and for which no customized fitting was ever performed.

161.    By way of further example and not limitation, under the relevant Fee Schedule in existence at the time, the permissible charges for knee braces range from $65.00, under code L1830, for a prefabricated knee brace dispensed off-the-shelf, to $1,107.70, under code L1844, for more complex models that are custom fabricated.

162.    In furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for knee supports, Strong, through Health Heaven, routinely submitted bills for Knee Orthosis using codes L1831 and/or L1832, which are reserved for prefabricated DME and/or orthotic devices that require a customized fitting, notwithstanding that a customized fitting was never performed.

Exhibit "6" in the accompanying Compendium of Exhibits is a representative sample of claims where Health Heaven submitted fraudulent bills for Knee Orthosis using codes L1831 and/or L1832. Furthermore, by way of example and not limitation, the Appendix to the Complaint, identifies a representative sample of predicate acts, including claim nos. 0728546896-02, 0726572308-01, 0722691318-06, 0722105590-01, 0717183248-01, 0714457546-01, 0713778850-01, 0711452185-02, and 0697737757-03 in which Health Heaven mailed fraudulent claims for Knee Orthoses, billed under codes L1831 and/or L1832, that were supplied pursuant to the fraudulent protocol of treatment described herein, in exchange for kickbacks and/or other financial compensation agreements, for medically unnecessary items in order to exploit and manipulate the payment formulas under the applicable Fee Schedule to maximize the charges that they could submit to Plaintiffs.

163. By billing Knee Orthoses under codes L1831 and/or L1832, Strong, through Health Heaven, falsely represented that they measured and/or customized the DME and/or orthotic device for the Covered Person, when they did not, and/or that they fabricated the DME and/or orthotic device solely for a particular Covered Person from mainly raw materials based on the Covered Persons' measurements, tracings, and patterns, which they did not.

164. To the extent any DME and/or orthotic devices were provided, Strong, through Health Heaven, provided cheap, prefabricated one-size-fits-all knee braces, which were not custom made to the Covered Person's measurements and for which no customized fitting was ever performed.

165. Separate and apart from billing for custom fitted knee braces, in furtherance of the scheme to defraud, Strong, through Health Heaven, routinely submitted bills for Knee Orthosis using code L1844, which is reserved for more complex custom fabricated DME and/or orthotic

devices, notwithstanding that a custom fabricated device was not provided.  Exhibit "7" in the accompanying Compendium of Exhibits is a representative sample of claims where Health Heaven submitted fraudulent bills for Knee Orthoses using code L1844.  Furthermore, by way of example and not limitation, the Appendix to the Complaint, identifies a representative sample of predicate acts, including claim nos. 0719753823-01, 0715890927-03, and 0707409982-01, in which Health Heaven mailed fraudulent claims for knee braces, billed under code L1844, that were supplied pursuant to the fraudulent protocol of treatment described herein, in exchange for kickbacks and/or other financial compensation agreements, for medically unnecessary items in order to exploit and manipulate the payment formulas under the applicable Fee Schedule to maximize the charges that they could submit to Plaintiffs.

166.    By billing knee braces under code L1844, Strong, through Heaven Health, falsely represented that they measured and/or customized the DME and/or orthotic device for the Covered Person, when they did not, and/or that they fabricated the DME and/or orthotic device solely for a particular Covered Person from mainly raw materials based on the Covered Persons' measurements, tracings, and patterns, which they did not.

167.    To the extent any DME and/or orthotic devices were provided, Strong, through Health Heaven, provided cheap, one-size-fits-all knee braces, which were not custom made to the Covered Person's measurements and for which no customized fitting was ever performed.

168.    By way of further example and not limitation, under the relevant Fee Schedule in existence at the time, the permissible charges for shoulder orthoses ("SO") range from $40.00, under code L3650 for prefabricated, off-the-shelf SOs, to $896.92 under codes L3674 for more complex SOs that are custom fabricated.

169.    In furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for SOs, Strong, through Health Heaven, routinely submitted bills for Shoulder Orthosis using codes L3671 and/or L3674, which are reserved for more complex custom fabricated DME and/or orthotic devices, notwithstanding that a custom fabricated device was not provided.    Exhibit "8" in the accompanying Compendium of Exhibits is a representative sample of claims where Health Heaven submitted fraudulent bills for Shoulder Orthosis using codes L3671 and/or L3674.    Furthermore, by way of example and not limitation, the Appendix to the Complaint, identifies a representative sample of predicate acts, including claim nos. 0726544463-02, 0725251318-02, 0725405369-02, 0720756220-05,    0720756220-06,    0717651277-02,    0717461750-01,    0708588330-01,    and 0664208832-02 in which Health Heaven mailed fraudulent claims for SOs, billed under codes L3671 and/or L3674, that were supplied pursuant to the fraudulent protocol of treatment described herein, in exchange for kickbacks and/or other financial compensation agreements, for medically unnecessary items in order to exploit and manipulate the payment formulas under the applicable Fee Schedule to maximize the charges that they could submit to Plaintiffs.

170.    By billing shoulder braces under codes L3671 and/or L3674, Strong, through Health Heaven, falsely represented that they measured and/or customized the DME and/or orthotic device for the Covered Person, when they did not, and/or that they fabricated the DME and/or orthotic device solely for a particular Covered Person from mainly raw materials based on the Covered Persons' measurements, tracings, and patterns, which they did not.

171.    To the extent any DME and/or orthotic devices were provided, Strong, through Health Heaven, provided cheap, one-size-fits-all SOs, which were not custom made to the Covered Person's measurements.

172.    By way of further example and not limitation, under the relevant Fee Schedule in existence at the time, the permissible charges for wrist/hand orthoses ("WHO") range from $47.50, under code L3908 for prefabricated, off-the-shelf WHOs, to $759.66 under code L3905 for more complex WHOs that are custom fabricated.

173.    In furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for Wrist/Hand Orthoses, Strong, through Health Heaven, routinely submitted bills for Wrist/Hand Orthosis using code L3906, which is reserved for more complex custom fabricated DME and/or orthotic devices, notwithstanding that a custom fabricated device was not provided.    Exhibit "9" in the accompanying Compendium of Exhibits is a representative sample of claims where Health Heaven submitted fraudulent bills for Wrist/Hand Orthosis using code L3906.    Furthermore, by way of example and not limitation, the Appendix to the Complaint, identifies a representative sample of predicate acts, including claim nos. 0725150833-01, 0719753823-01, 0715721205-02, and 0715890927-03, and 0725405369-02, in which Health Heaven mailed fraudulent claims for Wrist/Hand Orthoses, billed under code L3906, that were supplied pursuant to the fraudulent protocol of treatment described herein, in exchange for kickbacks and/or other financial compensation agreements, for medically unnecessary items in order to exploit and manipulate the payment formulas under the applicable Fee Schedule to maximize the charges that they could submit to Plaintiffs.

174.    By billing shoulder braces under code L3906, Strong, through Health Heaven, falsely represented that they measured and/or customized the DME and/or orthotic device for the Covered Person, when they did not, and/or that they fabricated the DME and/or orthotic device

solely for a particular Covered Person from mainly raw materials based on the Covered Persons' measurements, tracings, and patterns, which they did not.

175.    To the extent any DME and/or orthotic devices were provided, Strong, through Health Heaven, provided cheap, one-size-fits-all Wrist/Hand Orthoses, which were not custom made to the Covered Person's measurements.

176.    The bills mailed by Health Heaven were fraudulent in that they misrepresented that (i) the Custom Fabricated or Custom Fit DME and/or Orthotic Devices were medically necessary when in fact they were not; (ii) they were provided pursuant to legitimate prescriptions when in fact they were not; (iii) they were prescribed by legitimate medical providers when in fact they were provided pursuant to illegal kickback and/or financial compensation arrangements with No-Fault Clinics; and (iv) the fee charged for the DME and/or orthotic devices were not in excess of applicable Fee Schedule in existence at the time the claim was mailed and/or the maximum reimbursement amount allowed under the No-fault Law. In these and numerous other ways alleged herein, the Retail Defendants designed and executed a fraudulent blueprint to bill and obtain payments from Plaintiffs for expensive Custom Fabricated or Custom Fit DME and/or Orthotic Devices that they were not entitled to receive under the No-fault law and implementing regulations.

**2.    Fraudulent Billing for Cervical Traction Equipment**

177.    Health Heaven routinely submitted fraudulent bills to Plaintiffs for what it refers to as "cervical traction equipment" under Fee Schedule Code E0855.

178.    The cervical traction equipment purportedly provided by Health Heaven are inexpensive replicas or knockoffs of a trademarked cervical traction unit, with a wholesale price that is a fraction of the cost associated with the authentic device. In that regard, to the extent

anything was supplied to Covered Persons at all, Health Heaven provided basic, inexpensive cervical traction units pursuant to a predetermined course of treatment, based on generic prescriptions, regardless of medical necessity and misrepresented the nature, quality, and cost of the items in each of the bills submitted to Plaintiffs.

179.    By billing for cervical traction units, it purportedly provided under code E0855, Strong, through Health Heaven, falsely represented that they provided expensive, medically necessary cervical traction units when in actuality they provided cheap, inexpensive items that in many cases were replicas or knockoffs of trademarked items.  By way of example and not limitation, Exhibit "10" in the accompanying Compendium of Exhibits is a representative sample of claims where Health Heaven submitted fraudulent bills for "cervical traction equipment" to Plaintiffs.  Furthermore, by way of example and not limitation, the Appendix to the Complaint, identifies a representative sample of predicate acts, including claim nos. 0727589236-02, 0726884513-04, 0725405369-02, 0721709517-01, 0723983854-03, 0719792839-02, 0719792839-03, 0715721205-02, 0713641512-01, 0712801091-01, 0712497188-06, 0713537546-02, and 0707409982-01, in which Health Heaven mailed fraudulent claims for "cervical traction equipment," billed under code E0855, that were supplied pursuant to the fraudulent protocol of treatment described herein, in exchange for kickbacks and/or other financial compensation agreements, for medically unnecessary items in order to exploit and manipulate the payment formulas under the applicable Fee Schedule to maximize the charges that they could submit to Plaintiffs.

180.    The bills mailed by Health Heaven were fraudulent in that they misrepresented that (i) the cervical traction equipment was medically necessary when in fact it was not; (ii) it was provided pursuant to legitimate prescriptions when in fact it was not; (iii) it was prescribed by

legitimate medical providers when in fact it was provided pursuant to illegal kickback and/or financial compensation arrangements with No-Fault Clinics; and (iv) the fee charged for "cervical traction equipment" was not in excess of applicable Fee Schedule in existence at the time the claim was mailed and/or the maximum reimbursement amount allowed under the No-fault Law. In these and numerous other ways alleged herein, the Retail Defendants designed and executed a fraudulent blueprint to bill and obtain payments from Plaintiffs for expensive "cervical traction equipment" that they were not entitled to receive under the No-fault law and implementing regulations.

### 3. Fraudulent Billing for DME and/or Orthotic Devices Not Provided

181.    In furtherance of the scheme to defraud alleged herein, Strong, through Health Heaven, routinely submitted bills to Plaintiffs for DME and/or orthotic devices that were never provided.

182.    By way of example and not limitation, Strong, through Health Heaven, routinely submitted fraudulent bills to Plaintiffs seeking reimbursement for "lumbar cushions" using code E2611 in the amounts of $282.40, which they did not provide as billed, if anything was provided at all.

183.    Under the relevant Fee Schedule in existence at the time, code E2611 is reserved for DME satisfying the description of "General Use Wheelchair Back Cushion" and is specifically reserved for support used in connection with a wheelchair.

184.    On information and belief, none of the Covered Persons who purportedly received a lumbar cushion from Health Heaven, billed under codes E2611, was wheelchair bound.

185.    To the extent any DME and/or orthotic device was provided, the lumbar cushions were not specialized wheelchair cushions, but rather simple back cushions for use in any chair that would otherwise be reimbursable under code E0190 at $22.04.

186.    By billing lumbar cushions under code E2611, Strong, through Health Heaven, falsely represented that they provided specialized wheelchair cushions and/or covers, when they did not.

187.    Exhibit "11" in the accompanying Compendium of Exhibits is a representative sample of claims where Health Heaven submitted fraudulent bills for lumbar cushions to Plaintiffs under codes E2611.  Furthermore, by way of example and not limitation, the Appendix to the Complaint, identifies a representative sample of predicate acts, including claim nos. 0728948134-01,  0728546896-02,  0722691318-03,  0723983854-03,  0718100720-01,  0715782876-01, 0715890927-03, and 0712497188-06, in which Health Heaven mailed fraudulent claims for lumbar cushions, billed under code E2611, that were supplied pursuant to the fraudulent protocol of treatment described herein, in exchange for kickbacks and/or other financial compensation agreements, for medically unnecessary items in order to exploit and manipulate the payment formulas under the applicable Fee Schedule to maximize the charges that they could submit to Plaintiffs.

188.    By way of further example and not limitation, Strong, through Health Heaven, routinely submitted bills to Plaintiffs for "TENS Units" under code E0730 in the amount of $76.25, which were not provided as billed, if any were provided at all.

189.    Under the relevant Fee Schedule in existence at the time, code E0730 is reserved for DME satisfying the description of "TENS four lead," transcutaneous electrical nerve stimulation (tens) device, four or more leads, for multiple nerve stimulation.

190. To the extent any DME and/or orthotic device was provided, Strong, through Health Heaven, provided a cheap "digital therapy machine", based on generic prescriptions, regardless of medical necessity and misrepresented the nature, quality, and cost of the items in each of the bills submitted to Plaintiffs.

191. By billing for cheap, "digital therapy machines", under code E0730, Strong, through Health Heaven, falsely represented that they provided medically necessary TENS Units, when they did not.

192. By way of example and not limitation, Exhibit "12" in the accompanying Compendium of Exhibits is a representative sample of claims where Health Heaven submitted fraudulent bills for TENS Units to Plaintiffs under code E0730. Furthermore, by way of example and not limitation, the Appendix to the Complaint, identifies a representative sample of predicate acts, including claim nos. 0728344847-02, 0723983854-03, 0718219363-02, 0715782876-01, and 0715890927-03, in which Health Heaven mailed fraudulent claims for TENS Units, billed under code E0730, that were supplied pursuant to the fraudulent protocol of treatment described herein, in exchange for kickbacks and/or other financial compensation agreements, for medically unnecessary items in order to exploit and manipulate the payment formulas under the applicable Fee Schedule to maximize the charges that they could submit to Plaintiffs.

193. By way of further example and not limitation, Strong, through Health Heaven, routinely submitted bills to Plaintiffs for TENS "placement belts" under code E0731 in the amount of $71.05, which were not provided as billed, if any were provided at all.

194. Under the relevant Fee Schedule in existence at the time, code E0731 is reserved for DME satisfying the description of "Conducive garment for TENS," form fitting conductive

garment for delivery of TENS or NMES (with conductive fibers separated from the patient's skin by layers of fabric).

195.    To the extent any DME and/or orthotic device was provided, Strong, through Health Heaven, provided a cheap inexpensive, thin cloth wraps lacking electrode pads, based on generic prescriptions, regardless of medical necessity and misrepresented the nature, quality, and cost of the items in each of the bills submitted to Plaintiffs.

196.    By billing for cheap, inexpensive, thin cloth wraps lacking electrode pads, under code E0731, Strong, through Health Heaven, falsely represented that they provided medically necessary TENS placement belts, when they did not.

197.    By way of example and not limitation, Exhibit "13" in the accompanying Compendium of Exhibits is a representative sample of claims where Health Heaven submitted fraudulent bills for placement belts to Plaintiffs under code E0731.  Furthermore, by way of example and not limitation, the Appendix to the Complaint, identifies a representative sample of predicate acts, including claim no. 0728344847-02, in which Health Heaven mailed fraudulent claims for TENS Placement Belts, billed under code E0731, that were supplied pursuant to the fraudulent protocol of treatment described herein, in exchange for kickbacks and/or other financial compensation agreements, for medically unnecessary items in order to exploit and manipulate the payment formulas under the applicable Fee Schedule to maximize the charges that they could submit to Plaintiffs.

198.    The bills mailed by Health Heaven were fraudulent in that they misrepresented that (i) the DME and/or Orthotic Devices were medically necessary and provided as billed when in fact they were not; (ii) they were provided pursuant to legitimate prescriptions when in fact they were not; (iii) they were prescribed by legitimate medical providers when in fact they were

provided pursuant to illegal kickback and/or financial compensation arrangements with No-Fault Clinics; and (iv) the fee charged for DME and/or Orthotic Devices was not in excess of applicable Fee Schedule in existence at the time the claim was mailed and/or the maximum reimbursement amount allowed under the No-fault Law. In these and numerous other ways alleged herein, the Retail Defendants designed and executed a fraudulent blueprint to bill and obtain payments from Plaintiffs for expensive DME and/or Orthotic Devices that they were not entitled to receive under the No-fault law and implementing regulations.

### THE NON-FEE SCHEDULE SCHEME TO DEFRAUD

**1.    Fraudulent Billing Using Fee Schedule Miscellaneous Codes**

199.    In furtherance of the scheme to defraud alleged herein, Strong, through Health Heaven, routinely submitted bills using billing codes E1399, which are reserved for miscellaneous items, either for Non-Fee Schedule items or Fee Schedule items with low reimbursement rates, and in doing so, they fraudulently misrepresented the nature and quality of the billed-for DME and/or orthotic devices and their acquisition costs.

200.    By way of example and not limitation, Strong, through Health Heaven, routinely submitted bills to Plaintiffs for massagers using code E1399, in the amount of $164.00, falsely representing that the amount billed is the lesser of the usual and customary price charged to the general public or Health Heaven acquisition cost plus 50%, when, to the extent anything was provided, the massagers were simple, hand held massagers for which the usual and customary price charged to the general public, upon information and belief, did not exceed $40.00. Exhibit "14" in the accompanying Compendium of Exhibits is a representative sample of claims in which Health Heaven submitted fraudulent bills for massagers to Plaintiffs using Fee Schedule Miscellaneous Code E1399.  Furthermore, by way of example and not limitation, the Appendix to the Complaint, identifies a representative sample of predicate acts, including claim nos.

0728344847-02, 0718219363-02, 0715890927-03, and 0712497188-06, in which Health Heaven mailed fraudulent claims for massagers, billed under code E1399, that were supplied pursuant to the fraudulent protocol of treatment described herein, in exchange for kickbacks and/or other financial compensation agreements, for medically unnecessary items in order to exploit and manipulate the payment formulas under the applicable Fee Schedule to maximize the charges that they could submit to Plaintiffs.

201.    The bills mailed by Health Heaven were fraudulent in that they misrepresented that (i) the massagers were medically necessary when in fact they were not; (ii) they were provided pursuant to legitimate prescriptions when in fact they were not; (iii) they were prescribed by legitimate medical providers when in fact they were provided pursuant to illegal kickback and/or financial compensation arrangements with No-Fault Clinics; and (iv) the fee charged for DME and/or Orthotic Devices was not in excess of applicable Fee Schedule in existence at the time the claim was mailed and/or the maximum reimbursement amount allowed under the No-fault Law. In these and numerous other ways alleged herein, the Retail Defendants designed and executed a fraudulent blueprint to bill and obtain payments from Plaintiffs for expensive massagers that they were not entitled to receive under the No-fault law and implementing regulations.

**2.    Fraudulent Billing of Non-Fee Schedule Items under Fee Schedule Codes**

202.    In furtherance of the scheme to defraud alleged herein, Strong, through Health Heaven, routinely submitted bills to Plaintiffs for Non-Fee Schedule Items using codes reserved for Fee Schedule Items in order to maximize the fraudulent charges they could submit to Plaintiffs, despite the fact that they never provided the billed-for items.  By way of example and not limitation, Strong, through Health Heaven routinely submitted bills to Plaintiffs for an "egg crate mattress," a Non-Fee Schedule Item, using the Fee Schedule code E0184, in the amount of

$153.13, which is reserved for a "dry pressure mattress," a Fee Schedule item, reimbursable in the maximum amount of $153.13.

203.    On information and belief, Health Heaven never provided an egg crate mattress or dry pressure mattress to any Covered Persons.

204.    To the extent any DME and/or orthotic device was provided, Health Heaven provided simple bubble mattress pads, which it described as an "egg crate mattress" or a "dry pressure mattress," for which the usual and customary price charged to the general public, upon information and belief, did not exceed $25.00.

205.    By submitting bills using code E0184, Strong, through Health Heaven, materially misrepresented that they provided dry pressure mattresses, when they did not, and also misrepresented that the item purportedly provided was a Fee Schedule item, seeking reimbursement in amounts upwards of *six* times what would otherwise have been a permissible charge for the Non-Fee Schedule item.  Exhibit "15" in the accompanying Compendium of Exhibits is a representative sample of claims in which Health Heaven submitted fraudulent bills for dry pressure mattresses to Plaintiffs by billing for the Non-Fee Schedule DME under a Fee Schedule code.  Furthermore, by way of example and not limitation, the Appendix to the Complaint, identifies a representative sample of predicate acts, including claim nos0728948134-01, 0728546896-02, 0725405369-02, 0723983854-03, 0718100720-01, 0715782876-01, 0715772919-02, and 0712497188-06, in which Health Heaven mailed fraudulent claims for dry pressure mattresses, billed under code E0184, that were supplied pursuant to the fraudulent protocol of treatment described herein, in exchange for kickbacks and/or other financial compensation agreements, for medically unnecessary items in order to exploit and manipulate the

payment formulas under the applicable Fee Schedule to maximize the charges that they could submit to Plaintiffs.

206.    By way of further example and not limitation, Strong, through Health Heaven, routinely submitted bills to Plaintiffs for "infrared lamps," which is a Non-Fee Schedule item, using code E0205, in the amount of $210.00, which is reserved for a "heat lamp, with stand, includes bulb, or infrared element," a Fee Schedule item.

207.    On information and belief, Health Heaven never provided a heat lamp with stand to any Covered Persons.

208.    To the extent any DME and/or orthotic device was provided, the devices purportedly provided were actually cheap, hand held heat lamps, reimbursable, if at all, as a Non-Fee Schedule item, for which the usual and customary price charged to the general public is, upon information and belief, no more than $40.00.

209.    By submitting bills using code E0205, Strong, through Health Heaven, materially misrepresented that they provided a heat lamp with a stand, when they did not, and also misrepresented that the item purportedly provided was a Fee Schedule item.

210.    Exhibit "16" in the accompanying Compendium of Exhibits is a representative sample of claims where Health Heaven submitted fraudulent bills for a heat lamp with stand to Plaintiffs by billing for the non-Fee Schedule DME under a Fee Schedule code.

211.    By way of further example and not limitation, Strong, through Health Heaven, routinely submitted bills to Plaintiffs for "whirlpool," which is a Non-Fee Schedule item, in the amount of $473.00, using code E1300, which is reserved for a "whirlpool portable," a Fee Schedule item.

212.    On information and belief, Health Heaven never provided a whirlpool to any Covered Person.

213.    On information and belief, to the extent any DME and/or orthotic device was provided, Health Heaven provided inexpensive "jet spas", which it described as "whirlpools", for which the usual and customary price charged to the general public, upon information and belief, did not exceed $60.00.

214.    By submitting bills using code E1300, Strong, through Health Heaven, materially misrepresented that they provided whirlpools to covered persons, when they did not, also misrepresented that the item purportedly provided was a Fee Schedule item. Exhibit "17" in the accompanying Compendium of Exhibits is a representative sample of claims where Health Heaven submitted fraudulent bills to Plaintiffs for whirlpools for covered persons, by billing for the non-Fee Schedule DME under a Fee Schedule code.

215.    The bills mailed by Health Heaven were fraudulent in that they misrepresented that (i) DME and/or orthotic devices were medically necessary when in fact they were not; (ii) they were provided pursuant to legitimate prescriptions when in fact they were not; (iii) they were prescribed by legitimate medical providers when in fact they were provided pursuant to illegal kickback and/or financial compensation arrangements with No-Fault Clinics; and (iv) the fee charged for DME and/or Orthotic Devices was not in excess of applicable Fee Schedule in existence at the time the claim was mailed and/or the maximum reimbursement amount allowed under the No-fault Law. In these and numerous other ways alleged herein, the Retail Defendants designed and executed a fraudulent blueprint to bill and obtain payments from Plaintiffs for expensive massagers that they were not entitled to receive under the No-fault law and implementing regulations.

3.    **Fraudulent Billing for Therapain Pulsed Laser Devices**

216.    In furtherance of the scheme to defraud alleged herein, Strong, through Heaven Health, routinely submitted bills to Plaintiffs for Therapain Pulsed Laser devices that were not provided as billed, supplied pursuant to fraudulent protocol of treatment, medically unnecessary and/or never provided.

217.    The Therapain Pulsed Laser is purportedly a handheld device that, according to its website, "combines 'light acupuncture' therapy from Chinese traditional medicine theory of acupuncture and "'light cycle' therapy" through a low intensity laser, which assists with recovery, improves blood function, reduces inflammation, relieves pain and adjusts bodily function. *See* https://therapain.us/instructions/.

218.    Notwithstanding the typical uses for the devices, referring HCPs routinely issue prescriptions for Therapain Pulsed Laser devices for Covered Persons who, in many instances, were involved in minor impact accidents and suffered only minor, soft tissue injuries, to the extent they suffered any injuries at all, along with a host of other expensive DME, designed to upcharge insurers for tens of thousands of dollars as part of a fraudulent protocol of medically unnecessary treatment.  In that regard, contemporaneous with the dispensing of the Therapain Pulsed Laser devices, Covered Persons received a substantial and similar battery of regular DME and often pain management rental DME, pursuant to a fraudulent protocol established at the No-fault Clinics where the Covered Persons presented for treatment.

219.    Moreover, the Therapain Pulsed Laser devices were provided contemporaneously with standard DME and often prior to the provision of additional perioperative and/or postoperative rental DME and/or compression devices the same day as, or shortly after undergoing

medically unnecessary arthroscopic surgeries at ASCs, pursuant to a fraudulent protocol of treatment established by the No-Fault Clinics that issue the fraudulent prescriptions.

220.    In keeping with the fact that the Therapain Pulsed Laser devices purportedly provided by Heaven Health were medically unnecessary, Covered Persons purportedly receiving the devices were, at the same time, undergoing a protocol of physical therapy treatment at the No-fault Clinics, obviating the need for at-home laser therapy.

221.    The Therapain Pulsed Laser devices are routinely prescribed by the same HCPs at the No-fault Clinics that are also prescribing upwards of ten or more pieces of regular DME. Covered Persons receiving Therapain Pulsed Laser devices are often referred for medically unnecessary arthroscopic surgical procedures for which Covered Persons are often prescribed additional rental DME devices including one or more additional compression devices, continuous passive motion devices and/or cryotherapy units.

222.    The prescriptions for the Therapain Pulsed Laser devices are never given to the Covered Persons.  Instead, the prescriptions are sent from many of the same referring medical clinics directly to a predetermined Rental DME provider in exchange for a kickback and/or other financial incentive or compensation.

223.    On information and belief, in numerous cases, the prescriptions from the referring providers are fabrications as part of the scheme to maximize reimbursement through these medically unnecessary rental DME, generally, and the Therapain Pulsed Laser devices, in particular.

224.    On information and belief, upon receipt of the prescriptions for the Therapain Pulsed Laser devices, Heaven Health routinely submits bills to indicating that the items is provided

to the Covered Person for a single day, when, in actuality, the items is provided for rental periods of four (4) weeks regardless of actual Covered Person need in order to maximize reimbursement.

225.    On information and belief, oftentimes, the devices are delivered to the Covered Persons without the Covered Persons' knowledge that they were going to receive the device.  Upon delivery, proper instruction on the use of the device and the risks associated with the device are not explained to the Covered Persons.  In many cases and as a result, the Covered Persons do not use the device and/or use the device improperly posing a risk to the Covered Persons' health as well rendering the device ineffective.

226.    In a legitimate medical clinic setting, when a patient is prescribed DME by an HCP, the provider would indicate in a contemporaneous examination report the DME that was prescribed and the reasons for prescribing it.  In keeping with the fact that the prescriptions for Rental DME provided to Covered Persons by Heaven Health were not medically necessary and provided pursuant to a predetermined fraudulent protocol, the contemporaneous examination reports written by the HCPs virtually never referenced the Therapain Pulsed Laser devices supplied by Heaven Health and never explained the necessity for the device.

227.    In keeping with the fact that the Therapain Pulsed Laser devices were not medically necessary and were provided pursuant to a predetermined fraudulent protocol, the prescriptions issued by the medical clinics that purportedly examined the Covered Persons were issued on boilerplate, pre-printed prescriptions forms that contained the same exact boilerplate language ostensibly explaining the medical necessity for the device, along with the physicians generic statement concerning the efficacy of the device.  There is, however, no discussion of any of the Covered Persons' individual needs and diagnoses, nor any explanation how the device will assist

the specific Covered Person. What is more, in nearly all instances the device is prescribed for an identical period of time regardless of the Covered Persons' conditions.

228.    In view of the foregoing, the Therapain Pulsed Laser devices supplied by Heaven Health were dispensed pursuant to protocol of treatment, without regard to medical necessity as part of an elaborate scheme to supply insureds with excessive and unnecessary Rental DME, in excessive amounts beyond what it was entitled to be reimbursed under the No-fault Law, in order to maximize reimbursement and exploit the payment formulas under the applicable Fee Schedule.

229.    In that regard, Heaven Health routinely billed Plaintiffs for Therapain Pulsed Laser devices under Code E1399, an HCPCS Code recognized under the Fee Schedule without a listed maximum reimbursement amount.

230.    On information and belief, Heaven Health's acquisition cost for the Therapain Pulsed Laser devices was approximately $2,500.00, the amount the Therapain Pulsed Laser devices is available for sale to the general public.

231.    At all relevant times herein, for the rental of DME either not listed on the WCB Fee Schedule, or listed without a maximum permissible rental charge, the "maximum permissible monthly rental charge for such durable medical equipment shall be one-tenth of the acquisition cost to the provider. Rental Charges for less than one month shall be calculated on a pro-rata basis using a 30-day month." 11 N.Y.C.R.R. § App.17-C Part E(d)(1) (Final Adoption effective February 15, 2023). As used in the regulation, "*acquisition cost* means the line-item cost to the provider from a manufacturer or wholesaler net of any rebates, discounts or valuable consideration, mailing, shipping, handling, insurance costs or sales tax." 11 N.Y.C.R.R. § App.17-C Part E (b) (promulgated by Notices of Emergency Adoption issued April 4, 2022, June 30, 2022, September 27, 2022, and December 28, 2022, and Final Adoption effective February 15, 2023).

232.    On information and belief, the maximum monthly rental rate that Heaven Health was permitted to charge for the rental of Therapain Pulsed Laser devices was thus, no more than $250.00.

233.    However, Heaven Health routinely billed Plaintiffs $3,150.00 for Therapain Pulsed Laser devices, more than twelve (12) times the maximum permissible monthly rental rate for the Therapain Pulsed Laser devices Heaven Health purportedly provided.

234.    By way of example and not limitation, Exhibit "18" in the accompanying Compendium of Exhibits is a representative sample of claims where Strong, through Health Heaven, mailed fraudulent bills to Plaintiffs for Therpain Pulsed Laser devices billed under code E1399.

235.    The bills mailed by Health Heaven were fraudulent in that they misrepresented that (i) the Therapain Pulsed Laser devices were medically necessary when in fact they were not; (ii) they were provided pursuant to legitimate prescriptions when in fact they were not; (iii) they were prescribed by legitimate medical providers when in fact they were provided pursuant to illegal kickback and/or financial compensation arrangements with No-Fault Clinics; and (iv) the fee charged for Therapain Pulsed Laser devices was not in excess of applicable Fee Schedule in existence at the time the claim was mailed and/or the maximum reimbursement amount allowed under the No-fault Law. In these and numerous other ways alleged herein, the Retail Defendants designed and executed a fraudulent blueprint to bill and obtain payments from Plaintiffs for expensive massagers that they were not entitled to receive under the No-fault law and implementing regulations.

## DISCOVERY OF THE FRAUD

236.    To induce Plaintiffs to promptly reimburse their claims for DME and/or orthotic devices, Defendants have gone to great lengths to systematically conceal their fraud.  By way of example and not limitation:

- Strong, through Health Heaven, routinely and deliberately failed to submit wholesale invoices with their initial bill submissions, thereby concealing the amounts that Health Heaven actually paid for any DME and/or orthotic devices, the manufacturer, make, model, size and quality of the goods, and the actual value of the goods in a legitimate marketplace;

- With respect to Fee Schedule Items, Strong, through Health Heaven, routinely misrepresented in the bills submitted to Plaintiffs that they provided more expensive items from the middle or top end of the Fee Schedule, rather than the inexpensive, basic items that actually were supplied;

- Strong, through Health Heaven, submitted false delivery receipts in support of their bills that purported to demonstrate the Covered Persons' receipt of the DME and/or orthotic devices, when, in actuality, the delivery receipts were routinely blank at the time the Covered Persons signed them;

- Strong, through Health Heaven, systematically failed and/or refused to provide Plaintiffs with a meaningful description of the DME and/or orthotic devices (*i.e.*, make and model) purportedly provided to Covered Persons, and/or additional information necessary to determine whether the charges submitted by Health Heaven was legitimate;

- Strong, through Health Heaven, routinely and deliberately submitted facially valid claims for reimbursement that were based on a pre-determined protocol of treatment without regard for medical necessity; and/or

- Strong, through Health Heaven, knowingly misrepresented and concealed that Health Heaven's claims for reimbursement were based on a pre-determined protocol of treatment without regard for medical necessity and were submitted pursuant to an unlawful referral, illicit kickback and/or other financial compensation arrangement between and among one or more of the Defendants and the No-fault Clinics in order to maximize reimbursement.

237.    Plaintiffs are under a statutory and contractual obligation to promptly and fairly process claims within 30 days. The documents submitted to Plaintiffs in support of the fraudulent claims at issue, combined with the material misrepresentations, omissions and acts of fraudulent

concealment described above, were designed to, and did cause Plaintiffs to justifiably rely on them. As a proximate result, Plaintiffs have incurred damages of more than $63,000.00 based upon the fraudulent bill submissions.

238.    Based upon Defendants' material misrepresentations and their serial efforts to conceal the various components to their scheme to defraud, Plaintiffs did not discover and could not have reasonably discovered the injury alleged herein until in or about February 2024.

## FIRST CLAIM FOR RELIEF

## AGAINST DEFENDANTS STRONG, ABC CORPORATIONS 1 THROUGH 5 AND JOHN DOES 1 THROUGH 5

## (RICO, pursuant to 18 U.S.C. § 1962(c))

239.    The allegations of paragraphs 1 through 238 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

240.    At all times relevant herein, Health Heaven was an "enterprise" engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4), and within the meaning of 18 U.S.C. § 1962(c).

241.    From, in or about March 2023 through the date of the filing of this Complaint, Defendants Strong, one or more of the ABC Corporations 1 through 5 and one or more of the John Does 1 through 5, knowingly conducted and participated in the affairs of the Health Heaven enterprise through a pattern of racketeering activity, including the numerous acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

242.    At all relevant times mentioned herein, Defendant Strong, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Health Heaven enterprise and utilized that control to conduct the pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs, that were based, in part, on the utilization of fraudulent prescriptions.

243.    On information and belief, one or more of the ABC Corporations 1 through 5 and one or more of the John Does 1 through 5 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, pursuant to a predetermined course of treatment, irrespective of medical necessity, based on illicit kickback and/or other financial compensation agreements between and among one or more of the Defendants and the No-fault Clinics, as well as bogus documentation to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Strong required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims.

244.    On information and belief, it was both foreseeable and the intended consequence of the illicit kickback and/or other financial compensation agreements between and among one or more of the Defendants and the No-fault Clinics, that the bogus documentation provided by one or more of the John Does 1 through 5, through one or more of the ABC Corporations 1 through 5, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

**The Pattern of Racketeering Activity**
**(Racketeering Acts)**

245.    The racketeering acts set forth herein were carried out on a continued basis for more than a nine-year period, were related and similar and were committed as part of the ongoing scheme of Defendants Strong, one or more of the ABC Corporations 1 through 5 and one or more

of the John Does 1 through 5 to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

246.    This pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, in as much as Health Heaven continues to pursue collection on the fraudulent billing to the present day.

247.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Strong, with the knowledge and intent of one or more of the ABC Corporations 1 through 5 and one or more of the John Does 1 through 5, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Health Heaven enterprise based upon materially false and misleading information.

248.    Through the Health Heaven enterprise, Defendant Strong submitted numerous of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to numerous of Covered Persons as billed. The bills and supporting documents that were sent by Defendant Strong, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Strong, one or more of the ABC Corporations 1 through 5 and one or more of the John Does 1 through 5 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Health Heaven enterprise through the filing of this Complaint.

249.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Strong,

in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

250.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

251.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

252.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs  have been injured in their business and property and have been damaged in the aggregate amount presently in excess of $63,000.00, the exact amount to be determined at trial.

253.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Strong, one or more of the ABC Corporations 1 through 5 and one or more of the John Does 1 through 5, jointly and severally, three-fold damages sustained by it, together with the costs of this lawsuit and reasonable attorneys' fees.

### SECOND CLAIM FOR RELIEF
### AGAINST DEFENDANTS HEALTH HEAVEN AND STRONG
### (Common Law Fraud)

254.    The allegations of paragraphs 1 through 238 are hereby repeated and realleged as though fully set forth herein.

255.    Defendants Health Heaven and Strong made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs for payment.

256.    Each and every bill and supporting documentation submitted by Defendants Health Heaven and Strong to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to Covered Persons. The false

representations contained therein not only were intended to defraud Plaintiffs but constitute a grave and serious danger to the Covered Persons and the consumer public.

257.    Defendants Health Heaven and Strong intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality, and cost of the DME and/or orthotic devices purportedly supplied to Covered Persons;

- False and misleading statements as to the amounts Health Heaven was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the Covered Persons;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to Covered Persons, generically describing the item to conceal the type of item being prescribed; and/or

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the (a) DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Strong, through Health Heaven, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices were not covered by the New York State Medicaid Fee Schedule; and (c) DME and/or orthotic devices were generically described on the prescriptions, all of which was designed to permit Defendant Strong, through Health Heaven, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

258.    The foregoing was intended to deceive and mislead Plaintiffs into paying Defendants Health Heaven's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint, as well as the exhibits in the accompanying Compendium of Exhibits.

259.    Defendants Health Heaven and Strong knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

260.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and upon a state of facts, which Plaintiffs were led to believe existed as a result of the acts of fraud and deception of Defendants Health Heaven and Strong.

261.    Had Plaintiffs known of the fraudulent content of the bills, prescriptions, and delivery receipts, they would not have paid the Defendants Health Heaven's claims for No-fault insurance benefits submitted in connection therewith.

262.    Furthermore, the far-reaching pattern of fraudulent conduct by Defendants Health Heaven and Strong evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed, and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

263.    By reason of the foregoing, Plaintiffs have sustained compensatory damages and been injured in their business and property in an amount as yet to be determined, but believed to be in excess of $63,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages, and other relief the Court deems just.

## THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS HEALTH HEAVEN AND STRONG

### (Unjust Enrichment)

264.    The allegations of paragraphs 1 through 238 are hereby repeated and realleged as though fully set forth herein.

265.    By reason of their wrongdoing, Defendants Health Heaven and Strong have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

266.    Plaintiffs are therefore entitled to restitution from Defendants Health Heaven and Strong in the amount by which they have been unjustly enriched.

267.    By reason of the foregoing, Plaintiffs have sustained compensatory damages and been injured in its business and property in an amount as yet to be determined, but believed to be in excess of $63,000.00, the exact amount to be determined at trial, plus interest, costs, and other relief the Court deems just.

## FOURTH CLAIM FOR RELIEF

## AGAINST THE RETAIL DEFENDANTS

### (Declaratory Judgment under 28 U.S.C. § 2201)

268.    The allegations of paragraphs 1 through 238 are hereby repeated and realleged as though fully set forth herein.

269.    At all relevant times mentioned herein, each and every bill mailed by Strong, through Health Heaven, to Plaintiffs sought reimbursement in excess of the amounts authorized by the No-fault Law and New York State Medicaid Fee Schedule by materially misrepresenting

the DME and/or orthotic devices provided, if provided at all, as well as the cost and quality of the billed for DME and/or orthotic devices.

270.    To the extent the DME and/or orthotic devices were provided at all, each item was a basic, low-quality piece of medical equipment for which Health Heaven's wholesale cost was a mere fraction of the amount they charged Plaintiffs and/or was medically unnecessary because it was provided pursuant to a predetermined course of treatment, irrespective of medical need.

271.    At all times relevant herein, the Retail Defendants exploited the No-fault Law and New York State Medicaid Fee Schedule through the utilization of various deceptive billing tactics engineered to maximize the amount of reimbursement from insurers, in general, and Plaintiffs, in particular, through the submission of fraudulent billing documents that misrepresented the nature, quality and cost of items that both are and are not listed on the relevant fee schedule purportedly provided to Covered Persons.

272.    In view of the Retail Defendants' submission of fraudulent bills to Plaintiffs, Plaintiffs contend that the Retail Defendants have no right to receive payment for any pending bills they have submitted because:

- The Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs to obtain reimbursement far in excess of the maximum permissible charges they could submit to Plaintiffs;

- The Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs seeking reimbursement for DME and/or orthotic devices that they never supplied to Covered Persons; and

- The Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs seeking reimbursement for DME that, to the extent anything was provided at all, was provided pursuant to a predetermined protocol of treatment without regard to medical necessity.

273. As the Retail Defendants have knowingly made the foregoing false and fraudulent misrepresentations about the DME and/or orthotic devices purportedly supplied to Covered Persons and the amounts they were entitled to be reimbursed, which they never supplied to Covered Persons, in order to manipulate the payment formulas under the No-fault Law and New York State Medicaid Fee Schedule in their claims submissions and obtain reimbursement far in excess of the maximum permissible charges they were entitled to receive, it is respectfully requested that this Court issue an order declaring that the Retail Defendants are not entitled to receive payment on any pending, previously-denied and/or submitted unpaid claims and Plaintiffs, therefore, are under no obligation to pay any of Retail Defendants' No-fault claims.

274. Plaintiffs have no adequate remedy at law.

275. The Retail Defendants will continue to bill Plaintiffs for false and fraudulent claims for reimbursement absent a declaration by this Court that Plaintiffs have no obligation to pay the pending, previously-denied and/or submitted unpaid claims, regardless of whether such unpaid claims were ever denied, regardless of the purported dates of service.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE,** Plaintiffs demands judgment as follows:

i) Compensatory damages in an amount in excess of $63,000.00, the exact amount to be determined at trial, together with prejudgment interest;

ii) Punitive damages in such amount as the Court deems just;

iii) Treble damages, costs, and reasonable attorneys' fees on the First Claim for Relief, with prejudgment interest;

iv) Compensatory and punitive damages on the Second Claim for Relief, with prejudgment interest;

v)      Compensatory damages on the Third Claim for Relief, together with prejudgment interest;

vi)      Declaratory relief on the Fourth Claim for Relief, declaring that Plaintiffs have no obligation to pay any No-fault claims submitted by the Retail Defendants because (1) the Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs about the DME and/or orthotic devices purportedly supplied to Covered Persons and the amounts they were entitled to be reimbursed in order to manipulate the payment formulas under the No-fault Law and New York State Medicaid Fee Schedule in their claims submissions and obtain reimbursement far in excess of the maximum permissible charges they could submit to Plaintiffs; (2) the Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs about the DME and/or orthotic devices purportedly supplied to Covered Persons by submitting claims for DME and/or orthotic devices that they never supplied to Covered Persons; and (3) the Retail Defendants made false and fraudulent misrepresentations in the bills and supporting documentation submitted to Plaintiffs seeking reimbursement for DME that was billed pursuant to a predetermined protocol of treatment without regard to medical necessity; and

vii)      Costs, reasonable attorneys' fees, and such other relief that the Court deems just and proper.

Dated: New York, New York,
          June 10, 2025

**MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP**

By:   /s/ Lee Pinzow                  
    Robert A. Stern, Esq.
    James McKenney, Esq.
    Lee Pinzow, Esq.
    Madison Forsander, Esq.
    Attorneys for Plaintiffs
    100 Wall Street, Suite 700
    New York, NY 10005
    Phone: (212) 858-7769

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, AND ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, | CIVIL ACTION |
| Plaintiffs, | 25-CV-3243 |
| -against- | COMPLAINT |
| HEALTH HEAVEN SERVICES INC., DASHA STRONG, JOHN DOES 1 THROUGH 5 AND ABC CORPORATIONS 1 THROUGH 5, | (TRIAL BY JURY DEMANDED) |
| Defendants. | |

# COMPLAINT

MANNING & KASS, ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS FOR PLAINTIFFS
100 WALL STREET, SUITE 700
NEW YORK, NY 10005
TELEPHONE: (212) 858-7769